Terry Lee ROBBINS, Plaintiff,

v.

Carroll SOUTH, Director, Montana Department of Institutions; and Henry Risley, Warden, Montana State Penitentiary, Defendants.

No. CV–84–8–BU.

United States District Court,
D. Montana,
Butte Division.

Oct. 9, 1984.

Terry Lee Robbins, pro se.

Nick A. Rotering, Sp. Asst. Atty. Gen., Dept. of Institutions, Helena, Mont., for defendants.

## MEMORANDUM and ORDER

WILLIAM D. MURRAY, Senior District Judge.

### I.

Plaintiff Terry Lee Robbins, an inmate of the Montana State Prison, brought this civil rights action against prison officials pursuant to 42 U.S.C. § 1983. Robbins contends his Eighth and Fourteenth Amendment rights have been violated by various policies and practices of the prison administration. Specific conditions of Robbins' confinement alleged to be violative of minimum constitutional standards include: (1) indifference to the inmate's dental needs; (2) maintenance of an inadequate law library; (3) imposition of time restrictions on the inmate's use of the law library; (4) failure to provide adequate legal supplies; (5) failure to furnish full-time notary service; (6) failure to provide free photocopying service; (7) imposition of restrictions on telephone communication between the inmate and counsel; (8) failure to allow the inmate sufficient time to consume meals; (9) invasion of the inmate's privacy by a female staff nurse; (10) maintenance of a punitive prisoner classification system; (11) confinement of the inmate and another prisoner in a cell designed for single occupancy; (12) maintenance of inaccurate records regarding the inmate; (13) denial of meaningful work, educational and self-improvement opportunities; (14) confiscation of the inmate's personal property without due process of law. Plaintiff seeks declaratory relief, compensatory damages and punitive damages.

Defendant Carroll South is the director of the Montana Department of Institutions. Defendant Henry Risley is the warden of the state prison.

Plaintiff, representing himself, filed this § 1983 complaint in January 1984. Before defendants could respond, the prisoner filed a supplementary complaint. Defendants then moved the court to dismiss the action, to strike the redundant material in the supplementary pleading, or to require the plaintiff to provide a more definite statement of his claims. The matter was submitted to the U.S. Magistrate, who denied the motions to dismiss and to strike but granted the motion for a more definite statement. Plaintiff took advantage of this third opportunity to make his case by filing the required statement on July 20, 1984.

The matter is before the court on defendants' renewed motion to dismiss. Defendants assert the prisoner has not alleged any facts that would support his claims of constitutional deprivation. The Magistrate has considered the defendants' motion and recommends the court dismiss this action in its entirety.

### II.

The court is persuaded that plaintiff has failed to state any claims of constitutional dimension. For the reasons outlined be-

low, the court dismisses plaintiff's § 1983 action.

### A. Medical Care

Plaintiff complains that defendants subjected him to cruel and unusual punishment by delaying dental treatments. The inmate alleges that he arrived at the prison suffering from lower gum infections and a missing upper dental plate. Plaintiff states that prison officials ignored several written requests for dental care during the inmate's first 90 days at the institution. Plaintiff admits that he received a series of dental treatments, including fillings and replacement of the missing plate, during the next three months of his incarceration.

▮ The standard regarding medical care of state prisoners was enunciated by the United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Denial of medical care by the state to those persons it is punishing by incarceration may result in pain and suffering inconsistent with contemporary standards of decency. Thus, the court in *Estelle* held that deliberate indifference to serious medical needs of prisoners constitutes "unnecessary and wanton infliction of pain," and is proscribed by the Eighth Amendment. 429 U.S. at 104, 97 S.Ct. at 291. Not every complaint by an inmate of medical inattention is of constitutional dimension. The "deliberate indifference" standard does not encompass negligent care, the inadvertent failure to provide care or differences in medical judgment between the inmate and prison officials. In order to state a cognizable claim under § 1983, the plaintiff must allege actions amounting to deliberate indifference to medical needs. Robbins has failed to allege that the defendants intentionally delayed treatment. The court is well aware of the demands placed on the prison's medical staff. The court finds the 90-day delay in commencing dental treatments of the plaintiff does not rise to the level of a constitutional violation.

### B. Inadequate Law Library

Plaintiff contends that the state prison law library is inadequate because pages are missing from some volumes, other volumes are not in hard cover and the area in which the books are stored is open to the general inmate population. Robbins also complains that there is no way to update the law, i.e., that the library does not contain the most recent Shepard's Citations or case law reporters and digests.

▮ It is well established that state prisoners have a fundamental right of access to the courts. That right requires prison authorities to take steps to allow or assist inmates to research legal topics, file actions and respond to suits. Prison officials must provide inmates with either an adequate law library or adequate assistance from persons trained in the law. *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). The court in *Bounds* did not prescribe what materials must be contained in a prison law library. Plaintiff's list of volumes in need of updating includes the United States Reports, Federal Reporter Series, Federal Supplement Series, Pacific Reporter Series, Montana Code Annotated, American Jurisprudence Series, American Law Review Series, Shepard's Citations and the United States Code Service. Plaintiff's list indicates the law library contains case law and statutory compilations relevant to prisoners' claims. Provision of these materials satisfies the requirements of *Bounds*. Plaintiff further complains that in the absence of the most recent volumes of these legal publications he cannot update the law. It is not to be expected that the prisons provide law libraries comparable to those found in law schools and large law firms. This is reflected in the rule that a pro se prisoner's pleadings are viewed under less stringent standards than those filed by members of the legal profession. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

▮ Provision of an adequate legal library is but one constitutionally acceptable method of providing prisoners with access to the courts. Under the rule set forth in

*Bounds,* an adequate law library need not be maintained where other methods of legal assistance assure meaningful access to the legal system. 430 U.S. at 830, 97 S.Ct. at 1499. The Magistrate correctly observes that the prison law library is supplemented by the services of the Montana Defender Project. The Defender Project provides able assistance to inmates seeking to pursue sentence review, post-conviction relief and civil rights matters. The Defender Project also is able to update the law for its inmate clients.

■ The test of the adequacy of the prison law library is whether inmates are afforded meaningful access to the courts. The court finds the library itself contains sufficient case law and statutory materials to provide such access. The court notes that inmate access to the courts is further aided by the Montana Defender Project.

### C. Related Access Claims

■ Plaintiff next complains that his access to the courts is unconstitutionally burdened by various policies and practices of the prison administration. He alleges that the provision of four envelopes and eight sheets of paper a month denies him access to the courts. He states that the failure of prison officials to provide full-time notary services imposes a similar burden. He also argues that the failure to provide inmates with free photocopying service for legal work is unconstitutional. He also claims that restrictions imposed on the time he spends in the law library and the number of telephone calls he is allowed to his attorney deny him access to the courts.

■ It is settled that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them and with postage to mail them. *Bounds, supra.* The high court offered no guidance as to the amount of legal supplies to which inmates are entitled. With regard to the Montana prison's provision of four envelopes and eight sheets of paper a month, the court finds the amounts reasonable and within the discretion of the facility's admin-

istration. Plaintiff also fails to show how the provision of notary services two days a week abridges or denies his right of access to the courts. The requirement that an inmate wait a few days on occasion to have a document notarized does not rise to the level of a constitutional violation. Likewise, the concept of a prisoner's fundamental right of legal access does not require prison officials to furnish free photocopying services.

■ With regard to the plaintiff's claim that his time in the law library is limited to a maximum of 17 hours a month, the court finds the inmate's due process right of access to the courts has not been denied. The record reveals Robbins has had sufficient time in the law library to research and draft three separate statements of his case and several motions in this action alone. The evidence fails to demonstrate any constitutional deprivation. Plaintiff also contends that his right of legal access is unduly restricted by the following prison policies: the requirement of prior written authorization to telephone counsel; the limitation of telephone calls to weekdays; and the limitation of outside calls to one per week. The court is persuaded that these policies regarding telephone communications do not abridge the inmate's meaningful access to counsel and the courts. These limitations are reasonable measures required to manage the telephone communications of the general inmate population as a whole. In addition to placing one outside call a week, the plaintiff may also contact his counsel through the mail or during prison visitations.

In asserting his constitutional right of access to the courts has been violated, the plaintiff relies heavily on the *Bounds* decision. But unlimited envelopes, pads, notary service, photocoping, library time and telephone calls are neither the "adequate law libraries" nor the "alternative sources of legal knowledge" required by the *Bounds* rule. Plaintiff fails to demonstrate how the reasonable limitation of these items actually denied him access to

the courts. The prison administration is not required to provide every jailhouse lawyer with a private law office.

### D. Insufficient Time to Eat

 Plaintiff next alleges that he is allowed only 12 to 15 minutes to consume his meals. He contends this practice constitutes cruel and unusual punishment. Robbins fails to state an Eighth Amendment violation. He does not allege that he has become ill or is malnourished because of this time limitation. The dehumanizing aspect of being required to eat in 15 minutes, noted in plaintiff's complaint, is not of sufficient intensity to be considered punishment, much less cruel and unusual punishment.

### E. Right to Privacy

Plaintiff complains that the practice of allowing a female staff nurse to dispense medications in the unit in which he is confined infringes upon his right to privacy. Specifically, the prisoner alleges that he might be observed naked, partially clad or using the toilet facilities in his cell. Plaintiff further alleges that prison officials refuse to allow him to partially obstruct the view into his cell.

 A prisoner does not enjoy the same right of privacy as do ordinary citizens in their homes and offices. *United States v. Dawson*, 516 F.2d 796, 805 (9th Cir.1975). There cannot be complete harmony between an inmate's interest in privacy and the prison administration's need for efficient operation of the institution. The state prisoner must relinquish some portion of the right to privacy. This court also recognizes that the prisoner's reduced privacy right must be balanced with the female staff member's right of equal job opportunity regardless of sex, as set forth by Congress in the Civil Rights Act of 1964.

 Plaintiff maintains that the fact a female staff member occasionally passes by his cell while dispensing medications deprives him of his privacy. Plaintiff does not allege that he is under constant, or even frequent, surveillance by female staff members. The court finds this intrusion is minor, and consistent with the limited privacy rights retained by a state prisoner.

### F. Punitive Classification System

Plaintiff also alleges that the prisoner classification system, based on an inmate's prison conduct, constitutes cruel and unusual punishment. His specific complaint is that the high security housing unit to which he is assigned offers harsher living conditions and allows less personal freedom than do its lower security counterparts.

 Decisions concerning the housing of inmates fall within the discretion of prison authorities. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Absent a showing that prison officials have abused this discretion, the court will not interfere in such decisions. Plaintiff fails to allege any facts showing that he is entitled to a less restrictive housing classification. Thus, the prisoner has not been deprived of any federally-secured rights by his assignment to a high security area.

### G. Double-Celling

 The next allegation of the plaintiff is that defendants have confined him with another inmate in a cell designed for single occupancy. He complains that overcrowding at the prison constitutes cruel and unusual punishment. The Supreme Court addressed the practice of double-celling in *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Double-celling, by itself, does not violate the Eighth Amendment. The court is aware of the pressures put upon prison housing by the unanticipated increase in inmate population in recent years. The plaintiff does not allege that he has been deprived of food, medical care or sanitation as the result of double-celling. His complaint reveals that he is allowed a reasonable amount of time outside the cell, to exercise or go to the law library, for example. In the absence of a showing that double-celling has subjected the plaintiff to the unnec-

essary or wanton infliction of pain, the court finds no constitutional deprivation. Long hours in a two-person cell may be unpleasant or uncomfortable. But this condition of confinement does not violate the Eighth Amendment.

### H. Inaccurate Records

■ Plaintiff claims the defendants maintain inaccurate information regarding himself in the prison records. He contends that inaccuracies concerning his alleged escapes from the Park and Missoula County jails have worked to his detriment inside the prison. Plaintiff fails to identify any particular decision by the prison staff, based on these records, that has injured him in any way or deprived him of his constitutional rights. Vague allegations that defendants have violated plaintiff's constitutional rights are insufficient to support a § 1983 action.

### I. Lack of Work, Educational and Self-Improvement Opportunities

Plaintiff also complains that prison officials have denied him work, educational and self-improvement opportunities. Additionally, the prisoner alleges defendants refuse to allow him to conduct his own work or hobby ventures for profit, thereby denying him the opportunity to earn enough money to pursue activities such as correspondence courses.

■ This court has stated repeatedly that an inmate has no constitutional entitlement to any particular prison employment. *See*, for example, *McFadden v. Mickelson and South*, CV–84–31–BU (D.Mont.1984). That reasoning can be extended to educational and self-improvement programs inside the prison. Decisions regarding employment and education of state inmates are well within the terms of confinement contemplated by prison sentences. The weight of authority also provides that a prisoner has no recognized right to conduct a business while incarcerated. *See*, for example, *French v. Butterworth*, 614 F.2d 23 (1st Cir.1980), cert. den., 446 U.S. 942, 100 S.Ct. 2167, 64 L.Ed.2d 797. The court finds that the prison administration's failure to provide plaintiff with vocational and educational training does not violate the constitution in the absence of a demonstration of seriously debilitating prison conditions.

### J. Confiscation of Personal Property

The plaintiff complains, finally, that prison officials' confiscation of his personal property was accomplished without due process of law. Plaintiff alleges that he purchased a television set from a fellow inmate. He contends that prison staff members confiscated the set because the other inmate's name was engraved on it. Robbins alleges that prison officials refuse to return the television set.

■ Federal jurisdiction is lacking for claims involving lost property where an adequate state remedy exists. *Parratt v. Taylor*, 451 U.S. 527 (1981). Plaintiff's claim of deprivation of personal property is cognizable under the Montana Tort Claims Act, Mont.Code Ann. § 2–9–101 et seq. Thus, Robbins' allegation that defendants wrongfully confiscated his television set does not rise to a constitutional dimension and is not within the scope of a § 1983 action.

### III.

In conclusion, the court finds plaintiff has failed to allege the deprivation of any federally-secured right. He has failed to state any § 1983 claim upon which relief can be granted.

THEREFORE IT IS ORDERED and this does order that defendants' motion to dismiss this action be and the same is hereby granted.