**David L. CANEDY, Jr., Plaintiff,**

v.

**Officer BOARDMAN, Warden Endicott, Lt. K. Radtke, John Bell, Defendants.**

No. 92–C–223–C.

United States District Court, W.D. Wisconsin.

June 23, 1992.

Amended July 20, 1992.

David L. Canedy, pro se.

John J. Glinski, Asst. Atty. Gen., Madison, Wis., for Officer Boardman, Warden Endicott, K. Radtke, John Bell, Dept. of Corrections and Dept. of Health & Social Services.

CRABB, Chief Judge.

This is a civil suit raising the competing concerns of the constitutional right of prison inmates to personal privacy and the rights of women to equal employment opportunities. Plaintiff is an inmate of the Columbia Correctional Institution in Portage, Wisconsin. He is proceeding *pro se* in this action, seeking injunctive and monetary relief. He contends that the defendants violated his Fourth Amendment right to personal privacy by subjecting him to a strip search conducted by a female prison guard. Additionally, he alleges that female officers observe him and other male inmates daily in various states of undress, creating feelings of embarrassment and humiliation in the inmates.

The case is before the court on defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

I conclude that plaintiff does not have the right under the Fourth Amendment to be free from observation by female guards under circumstances in which he would be subject to observation by male guards. The privacy rights that plaintiff would have as a free person give way in the prison setting to the institution's responsibility to maintain security and to accommodate the rights of female employees to equal employment opportunities. Therefore, I will grant defendants' motion to dismiss the complaint.

Plaintiff's complaint can be read as setting forth the following allegations of fact. For the purpose only of deciding this motion, I find these allegations as fact.

## ALLEGATIONS OF FACT

At 9:06 a.m., on or about February 21, 1992, corrections officers came to unit # 2 for a complete shakedown. There were ten or twelve officers present in front of cells one through six. Two female officers were in front of cells four and five.

Defendant Radtke ordered the strip search of the prisoners in unit # 2. Plaintiff was stripped by a male officer and by defendant Boardman, who is female. Plaintiff was stripped nude and defendant Boardman saw his genitals. This event robbed petitioner of his elementary self-respect and personal dignity, and caused him embarrassment, humiliation, and mental distress. There was no need to have a female participate in the strip search because there were ten male officers present. Defendants knew that an inmate should not be strip searched in the presence of officers of the opposite sex.

On several occasions, plaintiff has written an inmate complaint about this incident. In the last complaint, # 327–92, defendant Bell stated that "this is not a violation of any code or law." However, Wis.Admin.Code § DOC 306.16(7) states that a visual body inspection shall be conducted by a person of the same sex to preserve the dignity of the inmate.

Female officers observe male inmates in various states of undress and nudity daily, while the inmates dress, sleep, shower, and use toilet facilities. This creates a feeling of embarrassment and humiliation for the inmates.

Defendant Endicott knows these invasions of privacy occur and allows them to continue happening on a daily basis even though defendant Endicott has the power to make policies and enforce existing rules that would prohibit some of these infringements on prisoners' privacy. Defendant Bell's job is to protect inmates' rights, but he allows these deprivations to happen.

## OPINION

In considering a motion to dismiss for failure to state a claim under 42 U.S.C. § 1983, a court must decide whether the moving party has shown that the plaintiff has failed to "allege facts that, if believed, would show that a federal right was actually violated." *Himelstein v. City of Ft. Wayne,* 898 F.2d 573, 575 (7th Cir.1990). The court must accept the plaintiff's allegations of fact and any inferences reasonably drawn from those facts. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990).

Plaintiff's claim of an unreasonable search arises under the Fourth Amendment, which governs searches and seizures. "The test for reasonableness under the Fourth Amendment ... requires balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1979). Legitimate institutional concerns can justify severe constrictions on prison inmates' privacy interests. *Hudson v. Palmer,* 468 U.S. 517, 528, 104 S.Ct. 3194, 3201, 82 L.Ed.2d 393 (1984); *Bell v. Wolfish,* 441 U.S. at 537, 99 S.Ct. at 1873. Courts considering the extent of a prisoner's limited right to be free from invasions of privacy by members of the opposite sex must recognize the state's interests in maintaining the security of the institution, *Hudson,* 468 U.S. at 527–28, 104 S.Ct. at

3200–01 and in avoiding sex discrimination in prison jobs. *See Torres v. Wis. Dep't of Health & Social Servs.*, 838 F.2d 944, 951 (7th Cir.1988); *Smith v. Fairman*, 678 F.2d 52 (7th Cir.1982).

The nature of a penal institution deprives inmates of privacy even when they are engaged in the most personal of human activities. As Judge Doyle pointed out in *Morales v. Schmidt*, 340 F.Supp. 544, 546 (W.D.Wis.1972), *rev'd*, 489 F.2d 1335 (7th Cir.1973), *opinion on reh'g*, 494 F.2d 85 (7th Cir.1974):

> [T]he most striking aspect of prison, in terms of Fourteenth Amendment litigation, is that prison is a complex of physical arrangements and of measures, all wholly governmental, all wholly performed by agents of government, which determine the total existence of certain human beings (except perhaps in the realm of the spirit, and inevitably there as well) from sundown to sundown, sleeping, waking, speaking, silent, working, playing, viewing, eating, voiding, reading, alone, with others. It is not so, with members of the general adult population. State governments have not undertaken to require members of the general adult population to rise at a certain hour, retire at a certain hour, eat at certain hours, live for periods with no companionship whatever, wear certain clothing, or submit to oral and anal searches after visiting hours, nor have state governments undertaken to prohibit members of the general adult population from speaking to one another, wearing beards, embracing their spouses, or corresponding with their lovers.

Believing that persons subjected to such degrading conditions should retain some modicum of personal dignity, a number of courts have held that inmates retain the right not to be exposed deliberately to the view of guards of the opposite sex while the inmates are naked or using toilet facilities. *See, e.g., Cookish v. Powell*, 945 F.2d 441, 447 (1st Cir.1991) (finding that in 1987 law was that observation by a guard of the opposite sex that is "other than inadvertent, occasional, casual and/or restricted"

would violate the Fourth Amendment "in all likelihood," unless the observation occurred during an emergency); *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir.1982) (collecting cases) (holding that certain amount of viewing by female correctional officers of male inmates undressing, showering and using toilet may state constitutional claim); *Smith v. Chrans*, 629 F.Supp. 606, 611 (C.D.Ill.1986) (where sightings by female staff of male inmates in various stages of undress were occasional and at most inadvertent, inmates' residual right of privacy was not infringed); *Robbins v. South*, 595 F.Supp. 785, 791 (D.Mont.1984) (occasional presence of female staff while male prisoners undressed or used toilet facilities does not give rise to constitutional violation); *Miles v. Bell*, 621 F.Supp. 51, 67 (D.Conn.1985) (to show violation of privacy rights, inmates must show that "viewing" by guards of the opposite sex occurs on a regular basis).

I find it problematic to impose the condition of inadvertency or infrequency or randomness upon observations by guards of the opposite sex. As much as I can empathize with the dehumanization suffered by individuals who are confined to penal institutions and forced to surrender nearly every aspect of the privacy treasured in our society, I cannot accept the premise that the difference between being viewed by a prison official of one sex rather than the other is significant enough to warrant limitations on the employment opportunities of correctional officers of the opposite sex. When that differential in privacy is weighed against the rights of present and prospective prison officials to fair and equal employment opportunities, it is too light to tip the scales in favor of the inmate.

Prison officials are subject to the requirement that an employer limit sex-based discrimination "[to] those certain instances where ... sex ... is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. sec. 2000e–2(e)(1) (Title VII). The Court of Appeals for the Seventh Circuit has stated

that the bona fide occupational qualification exception is " 'an extremely narrow exception to the general prohibition of discrimination on the basis of sex.' " *Torres v. Wis. Dep't of Health & Social Servs.,* 859 F.2d 1523, 1527 (7th Cir.1988) (en banc), (quoting *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977)), *cert. denied,* 489 U.S. 1082, 109 S.Ct. 1537, 103 L.Ed.2d 841. In *Torres,* the court found that privacy considerations of female inmates were insufficient to establish a bona fide occupational qualification justifying the use of same-sex guards in a penal institution. *Id.* at 1529.

I am not prepared to find that observation of male prisoners in various states of undress, even during strip searches, by female prison guards in the performance of their duties is a violation of the prisoners' right to privacy calling for a bona fide occupational qualification under Title VII. "[I]f woman guards behave in a professional manner at all times, they will engender reciprocal respect from inmates, who will recognize that their privacy is being invaded no more than if a woman doctor examines them. The suggestion implicit in the privacy argument that such behavior is unlikely on either side is an insult to the professionalism of guards and the dignity of inmates." *Dothard v. Rawlinson,* 433 U.S. at 346 n. 5, 97 S.Ct. at 2735 (Marshall, J., dissenting from a majority holding that because of the " 'rampant violence' " and " 'jungle atmosphere' " of the Alabama prisons, *id.* at 334, 97 S.Ct. at 2729 (quoting *Pugh v. Locke,* 406 F.Supp. 318, 325 (M.D.Ala.1976), sex was a bona fide occupational qualification in Alabama prison system).

Other courts have found that gender cannot be a bona fide occupational qualification in circumstances requiring observation of opposite sex inmates in various states of undress, or in instances requiring strip searches and full body frisks of male prisoners conducted by female guards. *See Timm v. Gunter,* 917 F.2d 1093 (8th Cir. 1990) (not unreasonable for prison to authorize female guards to conduct surveillance of all areas including shower and toilet facilities, and to pat-search male prisoners on the same basis as male guards, given the prison system's interest in protecting the equal employment rights of prison guards); *Bagley v. Watson,* 579 F.Supp. 1099 (D.Or.1983) (female corrections officers cannot be excluded from positions that involve both performing "pat-down" frisk searches of clothed male inmates and visual observations of male inmates in various states of undress); *Griffin v. Michigan Dep't of Corrections,* 654 F.Supp. 690, 702–03 (E.D.Mich.1982) (inmates did not possess any protected privacy right under the Constitution against being viewed while naked by corrections officers of the opposite sex; therefore, gender was not a bona fide occupational qualification for corrections officers).

If female guards are to be given equal opportunity for employment and promotion, it is necessary to allow them to observe male prisoners and conduct searches just as male officers would. To exclude females from observing or participating in all aspects of guard work could prevent them from gaining the experience they need to advance to higher positions, and bar them from assuming those positions that require monitoring of inmate searches or other activities in which inmates are unclothed.

It does not follow from this holding that prison officials should not adopt measures designed to afford privacy to inmates whenever it is reasonable to do so. *See, e.g., Torres,* 859 F.2d at 1524 (noting that female inmates at women's maximum security prison permitted to cover windows in the doors of their rooms with "privacy cards" for up to ten minutes between hours of 6:00 a.m. and 9:00 p.m. while they are dressing or using the toilet); *Timm v. Gunter,* 917 F.2d at 1102 (use of a covering towel while using the toilet or while dressing and body positioning while showering or using a urinal would allow more modest inmates to minimize invasions of their privacy). Nor does it follow that prison officials are relieved from the obligation of

training their employees, male and female, in professional techniques of conducting visual and contact searches or from the duty of ensuring that the employees carry out all searches in the least obtrusive manner consistent with the purpose of the search.

Plaintiff raises the additional contention that defendant Boardman's participation in the strip search violated the state's regulations. Such a contention does not state a claim that this court can address. Ensuring that states follow their own regulations is beyond the authority of the federal courts. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Eleventh Amendment prevents federal courts from ordering state officials to conform their conduct to state law).

### ORDER

IT IS ORDERED that defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and to dismiss this case.