EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gabriel Pérez López<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | Certiorari<br><br>2022 TSPR 10<br><br>208 DPR ____ |

Número del Caso: CC-2019-668

Fecha: 25 de enero de 2022

Tribunal de Apelaciones:

    Panel XI

Abogado de la parte peticionaria:

    Por derecho propio

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez<br>    Procurador General

    Lcda. Sylvia Roger Stefani<br>    Procuradora General Auxiliar

Materia: Derecho Constitucional y Administrativo – La denegatoria del Departamento de Corrección y Rehabilitación de Puerto Rico a reproducir en fotocopia ciertas cartas es una acción que no infringe el derecho constitucional del confinado al libre acceso a los tribunales.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gabriel Pérez López<br><br>**Peticionario**<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>**Recurrido** | CC-2019-0668 | *Certiorari* |

**Opinión del Tribunal emitida por el Juez Asociado señor Rivera García.**

En San Juan, Puerto Rico, a 25 de enero de 2022.

En esta ocasión nos vemos llamados a precisar, en primer lugar, si la denegatoria del Departamento de Corrección y Rehabilitación de Puerto Rico a reproducir en fotocopia ciertas cartas del peticionario es una acción que infringe el derecho constitucional del confinado al libre acceso a los tribunales ——cual les adelantamos que la contestación es en la negativa. Pero más importante que la adjudicación de la controversia inmediata, este caso, además, nos permite abordar de forma novel el alcance de la discreción de esta agencia administrativa para hacer cumplir los reglamentos internos referente a las condiciones de vida de los confinados. De esta forma, al atender el recurso de autos, aprovechamos la ocasión para aclarar, y a su vez pautar, que el ejercicio de la discreción del Departamento de Corrección, al amparo de su ley orgánica y de sus

reglamentos, se presume válida en la medida en que no conflija o vulnere algún derecho constitucional del confinado. Veamos.

A continuación, exponemos el trasfondo fáctico y procesal del caso que nos ocupa. Conviene aclarar que los hechos medulares no están en controversia.

## I.

Este caso tuvo su génesis el 4 de marzo de 2019 cuando el Sr. Gabriel Pérez López (peticionario) acudió a la biblioteca de la institución penal adscrita al Departamento de Corrección y Rehabilitación de Puerto Rico (DCR o Departamento de Corrección), donde se encuentra confinado extinguiendo una condena. Allí se le denegó su solicitud para fotocopiar unas "cartas legales" y sus anejos. Esto luego de que el peticionario acudiera a la biblioteca unos días antes para solicitar este servicio a lo que la bibliotecaria le indicó que no realizaría el servicio sin la autorización del Superintendente. También le informó que sólo se permitía reproducir mociones que fueran dirigidas a los tribunales. No obstante, tras solicitar dicho permiso, la Superintendencia del DCR denegó su petición.[1]

Inconforme con esta denegatoria, el 12 de marzo de 2019, el peticionario presentó una *Solicitud de Remedio*

---

[1] *Solicitud de Remedio Administrativo*, 12 de marzo de 2019 (MA-249-19)(R-18).

*Administrativo* ante la División de Remedios Administrativos del DCR, en la que impugnó la denegatoria del servicio de fotocopiadora. En su petitorio, adujo que los referidos documentos eran "cartas legales" dirigidas al Gobernador de Puerto Rico, al Secretario de Corrección y a varios legisladores con el fin de que atendieran asuntos sobre su confinamiento y calidad de vida.[2] Alegó que el propósito de fotocopiar las cartas era para preservar copias por si las originales se extraviaban, en caso de necesitarlas en algún pleito futuro para así contar con prueba del agotamiento de las ayudas que ha solicitado del Gobierno. En fin, sostuvo que el *Reglamento Acceso a Recursos Legales* (Reglamento), *infra*, no prohíbe tal uso y que la denegatoria de fotocopiar sus cartas dirigidas al Gobierno interfiere con su derecho de libre acceso a los tribunales.[3]

Consecuentemente, el 8 de mayo de 2019, la División de Remedios Administrativos del DCR emitió una *Respuesta* concluyendo que, conforme al Reglamento, *infra*, solamente se permitía fotocopiar mociones (a tribunales). A sus vez, sostuvo que la reproducción de cualquier otro tipo de documento que no fuesen mociones requería la aprobación del Superintendente de la institución.[4]

---

[2] Un examen detenido de las cartas revela que el peticionario solicitaba que se legislara un proyecto de ley que le facilitara rehabilitarlo y reintegrarlo a la libre comunidad mediante el estudio de profesiones como electricidad, plomería, carpintería, y albañilería.

[3] *Solicitud de Remedio Administrativo*, supra.

[4] *Respuesta al Miembro de la Población Correccional*, 8 de mayo de 2019 (notificada el 23 de mayo de 2019).

No conteste con la *Respuesta*, el 6 de junio de 2019, el peticionario interpuso una *Solicitud de Reconsideración, y* en esencia, reiteró su derecho al servicio bibliotecario al amparo del referido Reglamento y de su derecho constitucional.[5] No obstante, luego de evaluar su solicitud, el 14 de junio de 2019, la División de Remedios Administrativos del DCR emitió una segunda *Respuesta* donde sostuvo su determinación previa. A su vez, reiteró que la concesión de fotocopias queda en la discreción del Superintendente del DCR, según dispone el Art. XI(6) del Reglamento*, infra*.[6] Además, puntualizó que, al habérsele denegado el uso de la fotocopiadora por parte de la Superintendencia, la controversia se había tornado académica.

Inconforme con la determinación final del DCR, el 3 de julio de 2019, el peticionario acudió por derecho propio al Tribunal de Apelaciones mediante un recurso de revisión judicial y alegó que el Departamento de Corrección no le estaba proveyó un acceso adecuado y efectivo al servicio bibliotecario, de forma que coartaba su acceso a los tribunales.[7] Luego de examinar el recurso presentado, el 19 de julio de 2019 el foro apelativo lo desestimó por falta

---

[5] *Solicitud de Reconsideración*, fechada el 24 de mayo de 2019, ponchada el 29 de mayo de 2019, y recibida el 6 de junio 2019 (MA-249-19)(R-18).

[6] *Respuesta de Reconsideración al Miembro de la Población Correccional*, 14 de junio de 2019 (MA-249-19)(notificada al peticionario el 21 de junio de 2019).

[7] *Escrito de Apelación*, 3 de julio de 2019, Caso Núm. KLRA2019-00399.

de jurisdicción. Razonó que la respuesta del DCR "no dilucidó ni adjudicó derechos, obligaciones o privilegios de clase alguna" y que la misma versaba sobre un asunto administrativo interno que recaía dentro del ejercicio de la sana discreción del Superintendente del centro correccional. Por lo tanto, el foro revisor concluyó que no estaba ante un dictamen adjudicativo de una agencia administrativa revisable por los foros judiciales.[8]

No conteste con el dictamen desestimatorio, el 23 de agosto de 2019, el peticionario acudió por derecho propio ante esta Curia mediante un recurso de *certiorari*. Así, el peticionario le imputó error al Tribunal de Apelaciones por obviar sus derechos constitucionales al libre acceso a los tribunales mediante el servicio bibliotecario. Además, alegó que el Departamento de Corrección infringió su derecho constitucional y reglamentario de reproducir las referidas cartas. Razonó que, como parte de su derecho de libre acceso a los tribunales, el peticionario cuenta con un derecho de reproducir cartas dirigidas a funcionarios de gobierno en las que cuestiona las condiciones de su confinamiento. Por último, añadió que el reglamento que rige el uso de la fotocopiadora es contrario a derecho en la medida en que sujeta ese derecho a la discreción del Superintendente.[9]

---

[8] *Sentencia*, Tribunal de Apelaciones, 19 de julio de 2019, Caso Núm. KLRA201900399 (notificada el 22 de julio de 2019).
[9] *Alegato del Peticionario*, págs. 4-7.

Luego de expedido el recurso el 6 de diciembre de 2019, por su parte, el Procurador General presentó su *Alegato* ante esta Curia el 28 de septiembre de 2020. Este apuntaló que el Tribunal de Apelaciones no erró al desestimar el recurso de revisión del peticionario por falta de jurisdicción, debido a que no se trataba de un asunto adjudicativo revisable.[10] En ese sentido, puntualizó que las cartas no estaban relacionadas a algún litigio pendiente ante los tribunales. A su vez, señaló que el peticionario tampoco demostró haber sufrido algún perjuicio real por no poder reproducirlas dado que no estaba intentando acceder al sistema judicial. Por lo tanto, razonó que la alegación del peticionario era especulativa y abstracta, ya que trataba de la posibilidad de sufrir un daño por la aplicación de la norma reglamentaria. Concluyó, en fin, que la controversia no era una que impactara sustancialmente los derechos del peticionario como confinado.

Contando con el beneficio de la comparecencia de las partes, procedemos a exponer el marco jurídico aplicable a la controversia ante nuestra consideración. Veamos.

## II.

Como cuestión de umbral, es preciso aclarar la naturaleza del asunto a ser revisado ⸺en este caso, el derecho que le asiste a los confinados al momento de

---

[10] *Alegato del Procurador General*, pág. 9.

solicitar el uso de la fotocopiadora de la institución correccional.

## A. Acceso a Recursos Legales

Como antesala jurídica, aclaramos que nuestro ordenamiento carece de derecho constitucional, estatutario o jurisprudencial alguno que permita a los confinados a fotocopiar documentos estando recluidos en una institución penal. En ausencia de un llamado expreso a crear ese derecho, el Departamento de Corrección promulgó una reglamentación relevante dentro del marco amplio de discreción conferido por su ley habilitadora, la cual viabiliza, entre otras cosas, el uso de la fotocopiadora. Veamos.

En primer lugar, nuestra Carta Magna expresamente establece la política púbica del Estado de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social".[11] Ciertamente, el imaginativo jurídico puede configurar un sinnúmero de normas legales para dar consecución a esta política constitucional. No obstante, ello compete, primordialmente, a la voluntad del poder legislativo.

Cónsono con este mandato constitucional, al aprobar la Ley Núm. 2-2011, también conocida como el *Plan de*

---

[11] Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1.

*Reorganización del Departamento de Corrección y Rehabilitación de 2011,*[12] la Asamblea Legislativa le confirió al Secretario del Departamento de Corrección (Secretario de Corrección) amplia discreción reglamentaria para

> **adoptar**, establecer, desarrollar, enmendar, derogar **e implementar reglas**, **reglamentos**, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. (Énfasis suplido).[13]

En virtud de esa discreción, y en lo aquí pertinente, **el Secretario de Corrección promulgó el *Reglamento Acceso a Recursos Legales,*[14] con el propósito de reglamentar los recursos de *naturaleza legal* que se harán disponibles en las instituciones correccionales**.[15] Este cuerpo normativo aplica a todos los miembros de la población correccional y a todos los funcionarios responsables de su implantación.[16] Este Reglamento a su vez se promulga para cumplir con la jurisprudencia federal que le ha reconocido a los confinados el derecho de acceder a las cortes, cual naturalmente implica el deber del Estado de no interferir con ello y la obligación afirmativa de facilitarlo. De esta forma, en virtud de la Constitución Federal, las instituciones penales vienen obligadas a poner a la disposición de los confinados diversos recursos de índole legal, para facilitar la

---

[12] Ley Núm. 2-2011.
[13] Art. 7, 3 LPRA, Ap. XVIII.
[14] *Reglamento Acceso a Recursos Legales*, 14 de diciembre de 2016.
[15] Íd, Art. I.
[16] Íd, Art. III.

consecución de cualquier acción de derechos civiles que pudiera surgir mientras cumplen su condena. De igual forma, estos recursos deben permitirles cuestionar, directa o colateralmente, sus sentencias y condiciones de su confinamiento.[17] De esta forma, en Lewis v. Casey, 518 US 343 (1996), la Corte Suprema federal aclaró que un confinado que alega una violación a su derecho de acceso a las cortes debe probar un perjuicio real, de modo que se pruebe que las limitaciones en la biblioteca institucional o la ayuda legal disponible entorpecieron o dificultaron sus esfuerzos para perseguir un reclamo legal válido.[18]

Al abundar sobre su propósito, **el referido Reglamento establece la política de proveer a los miembros de la población correccional "acceso a los tribunales y servicios legales que sean necesarios para la protección de sus derechos constitucionales y legales"**. (Énfasis suplido).[19] Específicamente, algunos de los servicios que contempla el Reglamento incluyen: "(1) visitas de sus representantes legales; (2) acceso telefónico a su abogado, libre de interferencias en la llamada; (3) acceso por correspondencia con su abogado, libre de censura o restricción, y en caso de indigentes se les proveerá papel, sobre y el pago de

---

[17] Véase *Christopher v. Harbury*, 536 US 403, 415 (2002); *Lewis v. Casey*, 518 US 343, 355 (1996); *Bounds v. Smith*, 430 US 817, 821 (1977); *Younger v. Gilmore*, 404 US 15 (1971) (Per curiam); Johnson v. Avery, 393 US 483 (1969); Ex parte Hull, 312 US 546 (1941). Véase también J.M. Hill, *An Overview of Prisoners' Rights: Part I, Access to the Courts Under Section* 1983, 14 St. Mary's L.J. 957, 961 (1983).
[18] *Lewis v. Casey*, supra, pág. 351.
[19] Reglamento Acceso a Recursos Legales, *supra*, Art. V.

sellos a estos mismos fines; (4) acceso a materiales legales en tal capacidad que le permitan el estudio legal esencial y ayuda en su utilización, cuando sea necesaria.[20] Además, el inciso cuarto de su Art. VI permite a los reclusos "**tener bajo su control copias de** las partes de libros, **documentación relacionado a casos activos en el tribunal por parte del miembro de la población correccional o materiales que necesiten y que estén relacionados a los recursos que estén tramitando,** provisto por su abogado".(Énfasis suplido).[21] **Es decir, los reclusos pueden guardar consigo copias de documentos relacionados a reclamaciones que estén tramitando ante los foros judiciales de Puerto Rico.**

Establecida la tenencia permitida de recursos legales, ahora pasamos a examinar el marco reglamentario referente a su *reproducción*.

Para viabilizar su propósito, el Reglamento Acceso a Recursos Legales, *supra*, provee, entre otras cosas, para el uso de una biblioteca legal por parte de los confinados. En lo pertinente a esta controversia, su Art. XI dispone que

> 2. Habrá espacio para la revisión de materiales, así como el equipo necesario para tomar notas y **preparar documentos legales a ser radicados en los tribunales.**

y que

> 6. **A discreción del superintendente, se les proveerán fotocopias de** *mociones* **preparadas por el miembro de la población correccional** que tengan los

---

[20] Íd, Art. VI.
[21] Íd.

fondos y justifiquen la necesidad de utilizar las mismas. (Énfasis suplido).

De la mano con el anterior Reglamento, el *Manual de Normas y Procedimientos de Servicios Bibliotecarios en Instituciones Correccionales del Departamento de Corrección y Rehabilitación* (Manual de Servicios Bibliotecarios),[22] paralelamente rige el uso de la fotocopiadora por la población correccional al disponer que

> **[a] discreción del superintendente**, se les proveerán fotocopias a solicitud de los miembros de la población correccional que tengan los fondos y justifiquen la necesidad de utilizar las mismas. (Énfasis suplido).[23]

Aunque casi idéntico al lenguaje del referido Reglamento Acceso a Recursos Legales,[24] *supra*, el lenguaje más amplio del *Manual de Servicios Bibliotecarios* no circunscribe el uso de la fotocopiadora a la reproducción de mociones judiciales. Aun así, requiere la previa aprobación del Superintendente, dentro de su entera discreción.

---

[22] Manual Núm. DCR-2016-10, también promulgado el 14 de diciembre de 2016 al amparo de ley habilitadora del Departamento de Corrección.

[23] Íd. Art. VI.

[24] Conviene resaltar que tanto el Reglamento como el Manual referidos fueron promulgados únicamente al amparo del *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, supra, y no de la *Ley de Procedimiento Administrativo Uniforme*, infra. Estas tampoco disponen de remedios o mecanismos para reclamar los beneficios que les confieren a los confinados lo cual sugiere que dichos beneficios no fueron diseñados para tener entero peso de ley. Estos reglamentos internos están dirigidos a la organización interna de las agencias administrativas. Con este tipo de autoridad interna se persigue otorgarles libertad a las agencias administrativas para que organicen sus operaciones gerenciales. *Véase* J. Echevarría Vargas, Derecho Administrativo Puertorriqueño, 4ta ed. rev., Ed. Situm, 2017, pág. 97.

**B. Solicitud de Remedio Administrativo**

El *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional (*Reglamento de Remedios Administrativos)[25] fue promulgado al amparo de la ley federal conocida como el *Civil Rights of Institutionalized Person Act,*[26] para canalizar efectivamente los reclamos de la población correccional. Su fin es que la población correccional "disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio", para "minimizar las diferencias entre los miembros de la población correccional y el personal y para evitar o reducir la radicación de pleitos en los Tribunales de Justicia".[27] Conviene destacar que el referido reglamento, a diferencia de los anteriores, fue promulgado al amparo de la *Ley de Procedimiento Administrativo Uniforme*, infra.

En específico, el Reglamento de Remedios Administrativos, *supra*, define una *Solicitud de Remedio* como un "[r]ecurso que presenta un miembro de la población correccional por escrito, de una situación que afecta su calidad de vida y seguridad, relacionado con su confinamiento".[28] También, define una *Solicitud de Revisión Judicial* como un [e]scrito radicado por el miembro de la

---

[25] Reglamento Núm. 8583 de 4 de mayo de 2015 (efectivo el 3 de junio de 2015).
[26] 42 U.S.C. 1997, *et seq.*
[27] Reg. Núm. 8583, Introducción.
[28] Íd., Regla IV (24).

población correccional al Tribunal de Apelaciones solicitando revisión de la *Resolución de Reconsideración*.[29] Por su parte, una *Resolución de Reconsideración* significa un:

> [e]scrito emitido por el Coordinador, en el cual se contesta la **solicitud de reconsideración** acogida, radicada por el miembro de la población correccional. Ésta deberá contener un breve resumen de los hechos que motivaron la solicitud, el derecho aplicable y la disposición o solución a la controversia planteada.(Énfasis suplido).[30]

Mientras que una "**Solicitud de Reconsideración**" es un "[e]scrito radicado por el miembro de la población correccional dirigido al Coordinador, donde solicita una revisión de la respuesta emitida por el Evaluador".[31]

Respecto a la **jurisdicción** de la materia, el Reglamento de Remedios Administrativos, *supra*, establece una *División de Remedios Administrativos*[32] que atenderá las solicitudes radicadas por los miembros de la población correccional sobre:

> a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad o en su plan institucional.
> b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.
> c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".

---

[29] Íd., Regla IV (26).
[30] Íd., Regla IV (21).
[31] Íd., Regla IV (23).
[32] Íd., Regla V (1).

d. Alegaciones de violencia sexual por parte de un miembro de la población correccional.[33]

Por último, **el Reglamento de Remedios Administrativos,** *supra*, **contempla la revisión judicial** por parte del Tribunal de Apelaciones de las solicitudes de remedios administrativos presentadas por los confinados, al disponer que

> [e]l miembro de la población correccional podrá solicitar revisión ante el Tribunal de Apelaciones, dentro del término de (30) días calendarios, contados a partir de la fecha del archivo en autos de la copia de la Notificación de la Resolución de Reconsideración, emitida por el Coordinador de Remedios Administrativos o noventa (90) días a partir de la radicación de la Solicitud de Reconsideración acogida, si la Agencia no actúa conforme a la misma.[34]

## C. Revisión Judicial

Por su parte, el Reglamento del Tribunal de Apelaciones contempla la revisión judicial de las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios o funcionarias, ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley.[35] La revisión de determinaciones administrativas tiene como objetivo principal el delimitar la discreción que ostentan las agencias administrativas y asegurarse que estas desempeñen sus funciones conforme a los

---

[33] Íd., Regla VI (1).
[34] Regla XV.
[35] Regla 56, 4 LPRA Ap. XXII-B.

estatutos concernientes.[36] De esta forma, el foro apelativo revisará, como cuestión de derecho, las órdenes y resoluciones finales de los organismos y agencias administrativas.[37]

Para que una orden o resolución administrativa sea judicialmente revisable, al momento de presentar el recurso deben estar presentes los elementos siguientes: (1) que la resolución que se pretenda revisar sea final y no interlocutoria; y (2) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia.[38] Además, es requisito que la parte que presenta el recurso haya sido *adversamente afectada* por la orden o resolución de la agencia y debe haber agotado todos los remedios provistos.[39] Hemos interpretado que una "orden o resolución final", es aquella que dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes.[40] En fin, la actuación administrativa debe consignar los derechos y las obligaciones de las partes.

En Surfrider v. ARPE, 178 DPR 563, 579-580 (2010), dictamos que la frase "adversamente afectada" significa que "la parte recurrente tiene un interés sustancial en la

---

[36] *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999). Véase también *Méndez Cabrera v. Corporación Quintas de San Luis*, 127 DPR 635, 637 (1991); Echevarría Vargas, op. cit., pág. 305.

[37] Art. 4.002 de la Ley de la Judicatura de Puerto Rico, Ley Núm. 201-2003, 4 LPRA sec. 24 et seq.

[38] *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006).

[39] *Echevarría Vargas*, op. cit., pág. 310.

[40] Depto. Educ. v. Sindicato Puertorriqueño, *supra*, pág. 545.

controversia **porque sufre o sufrirá una lesión o daño particular que** es causado por la acción administrativa que se impugna mediante el recurso judicial". Además, puntualizamos que el daño debe ser claro y específico; este no puede ser abstracto, hipotético o especulativo.

La parte que solicita la revisión judicial de las determinaciones de las agencias administrativas además tiene el peso de probar su *legitimación*. Dicha legitimación "se demuestra mediante la alegación de hechos que permitan [a]l foro judicial constatar que es parte adversamente afectada por la decisión que se impugna".[41] En síntesis, es requisito para quien invoca la revisión judicial demuestre lo siguiente: (1) que es parte, y (2) que es o será adversamente afectado por la actuación de la agencia que se impugna.[42] Finalmente, hemos reconocido en los reclamos contra las agencias que los requisitos de legitimación activa deben de interpretarse de forma más flexible.

En cuanto al alcance de la revisión judicial en las determinaciones administrativas, **los dictámenes de los organismos administrativos merecen la mayor deferencia judicial y su revisión se limita a determinar si la agencia actuó arbitraria, ilegalmente o irrazonablemente en abuso a su discreción.**[43] Así, las decisiones discrecionales de las

---

[41] Íd., en la pág. 585; In re: *Municipio de Aguada, et al., v. Junta de Calidad Ambiental*, 190 DPR 122 (2014).
[42] Íd.
[43] *DACO v. TRU of Puerto Rico*, 191 DPR 760 (2014); *San Vicent Frau v. Policía de P.R.*, 142 DPR 1 (1996).

agencias administrativas no son revisables a menos que se haya actuado en exceso del poder delegado, en errores de derecho o en una interpretación incorrecta de la ley.[44] No obstante, se puede recurrir a los tribunales cuando estén en controversia derechos constitucionales.[45]

Específicamente, este Tribunal reconoció que las autoridades correccionales gozan de gran discreción y merecen la deferencia de los tribunales, cuando una parte pretende revisar judicialmente sus actuaciones.[46] A su vez, hemos reconocido que el Departamento "merece deferencia en la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias".[47] La función revisora de este foro apelativo con respecto a las determinaciones del Departamento de Corrección, como de cualquier otra agencia, es de carácter limitado.[48] Sus decisiones merecen nuestra mayor deferencia judicial, sobre todo, cuando es la agencia quien tiene la especialización necesaria para atender situaciones particulares sobre las cuales la ley le confiere jurisdicción.[49]

---

[44] *Federación de Maestros v. Molina Torres*, 160 DPR 571 (2003); *Echevarría Vargas*, op. cit., pág. 308.
[45] Íd.
[46] *Cruz Negrón v. Administración de Corrección*, 164 DPR 341 (2005).
[47] Álamo Romero v. Adm. de Corrección, 175 DPR 314, 334 (2009)(Cita omitida).
[48] *López Borges v. Adm. Corrección*, 185 DPR 603 (2012).
[49] Álamo Romero v. Adm. de Corrección, *supra*.

Por último, la revisión de las decisiones finales de los organismos y agencias administrativas se tramitará de conformidad con las disposiciones de la Ley de Procedimiento Administrativo Uniforme, *infra*.

**D. Ley de Procedimiento Administrativo Uniforme**

La Ley Núm. 38-2017, conocida como la *Ley de Procedimiento Administrativo Uniforme de Puerto Rico* (LPAU), rige los procedimientos reglamentarios y adjudicativos realizados por las agencias administrativas.[50]

La LPAU dispone que una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente puede solicitar la revisión judicial de una orden o resolución adjudicativa final dictada por una agencia.[51] Además, como regla general, las órdenes o resoluciones interlocutorias emitidas por las agencias no serán revisables.[52] En cuanto al alcance de la revisión judicial, **el tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.**[53]

Por último, cualquier parte adversamente afectada por una resolución del Tribunal de Apelaciones podrá solicitar la revisión de la misma mediante la presentación de recurso

---

[50] 3 LPRA sec. 9601 et seq.
[51] 3 LPRA sec. 9672.
[52] Íd.
[53] 3 LPRA sec. 9675.

de Certiorari ante el Tribunal Supremo dentro del término jurisdiccional. Siendo el *Certiorari* el vehículo apropiado para revisar las sentencias del Tribunal de Apelaciones emitidas en recursos de revisión provenientes de las agencias administrativas, conforme a la Ley de la Judicatura de Puerto Rico, *supra*, y a la Regla 20 del Reglamento de este Tribunal, esta Curia goza de jurisdicción para así hacerlo.[54] Con el marco jurídico esbozado, procedemos a resolver la controversia del caso de marras.

## III.

En su alegato, el peticionario arguye que la denegatoria de reproducir sus cartas por parte de la institución correccional infringió su derecho constitucional de acceso a los tribunales, ya que se vería desprovisto de los medios para preservar prueba de sus reclamos a las distintas ramas del Gobierno, de tener que llegar a un tribunal. No obstante, por resultar en una aplicación errada del estado de derecho vigente a un reclamo hipotético y especulativo, no le asiste la razón. Nos explicamos.

El silogismo a seguir es el siguiente: no todo documento que un confinado intente fotocopiar necesariamente es uno de índole legal mediante el cual se intenta acceder a los tribunales, al amparo de su derecho constitucional. **Por consiguiente, en la medida en que el fin inmediato del**

---

[54] 4 LPRA Ap. XXI-B.

**documento no sea lograr acceso a las cortes, este no será uno cobijado por el derecho de acceder a los tribunales.**

Actualmente el peticionario se encuentra confinado en una institución penal adscrita al Departamento de Corrección. Es decir, bajo una condición de libertad restringida que nuestro estado de derecho forzosamente impone como pena luego de la comisión de un delito. No obstante lo anterior, la institución correccional donde se encuentra recluido el peticionario cuenta con una biblioteca para propender a su misión rehabilitadora. A su vez, esta tiene disponible equipo de impresión y reproducción de documentos en caso de que los reclusos necesitaren sacar copias de algún documento *legal* —entiéndase alguna demanda, moción u otro escrito ante un tribunal, o alguna comunicación con su representante legal, conforme al *Reglamento Acceso a Recursos Legales*, supra.

En este contexto, el peticionario le solicitó al personal de la biblioteca permiso para sacar copias a ciertas cartas redactadas por él y dirigidas a unos funcionarios públicos con relación a las condiciones de su confinamiento. Sin embargo, al no ser escritos legales dentro de la definición contemplada por el *Reglamento*, supra, su pedido fue denegado por el DCR.

**Concretamente, el peticionario quería reproducir unas cartas dirigidas a varios funcionarios públicos de las ramas**

ejecutiva y legislativa, <u>más no a tribunal, juez o magistrado alguno</u>. <u>Tampoco las referidas misivas iban dirigidas a su abogado</u>. Un examen detenido de estas revela que el peticionario solicitaba que se legislara un proyecto de ley que le facilitara rehabilitarlo y reintegrarlo a la libre comunidad mediante el estudio de profesiones como electricidad, plomería, carpintería, y albañilería. Es decir, **dichas cartas no eran reclamaciones judiciales ni extrajudiciales contra los funcionarios, así como tampoco eran comunicaciones privilegiadas con su representante legal. En fin, del expediente no surge que el peticionario estuviese tramitando acción civil o administrativa alguna ante los foros judiciales de Puerto Rico.**

Por su parte, el Estado señala que el reclamo del peticionario es especulativo y abstracto, puesto que no demostró que se coartó su derecho al acceso a los tribunales. Como consecuencia, arguye que está ausente algún asunto justiciable, por lo que actuó correctamente tanto el Departamento de Corrección, como el Tribunal de Apelaciones al denegar el uso de la fotocopiadora.

Al repasar los preceptos legales relevantes, apreciamos que, en primer lugar, el Art. VI(4) del Reglamento Acceso a Recursos Legales, *supra*, *permite* a los reclusos "***tener* bajo su control copias de** las partes de libros, documentación relacionada a casos activos en el tribunal por parte del miembro de la población correccional o **materiales que**

**necesiten y que estén relacionados a los recursos que estén tramitando**, provisto por su abogado".[55] Además, consideramos que su Art. XI(6) dispone que "se les proveerán fotocopias de *mociones* preparadas por el miembro de la población correccional".[56] Es decir, aunque el Reglamento Acceso a Recursos Legales, *supra*, provee acceso y tenencia de recursos legales, su reproducción (sacar copias) solo está disponible para *mociones* **preparadas por el confinado ——que no es otra cosa que escritos dirigidos a un tribunal**. Por lo tanto, aprobar la reproducción de cualquier otro tipo de documento se enmarca dentro de la facultad discrecional conferida al Superintendente de Corrección.

De las referidas disposiciones reglamentarias claramente se desprende la amplia oferta de servicios dirigida a que los confinados tengan acceso a los tribunales en la tramitación de sus reclamos. Ciertamente, ello responde a la importancia de viabilizar cualquier reclamación sobre violación de derechos civiles que pudiese ocurrir en una institución penal. La ausencia de este mecanismo elemental de denuncia se pudiera prestar para encubrir, y perpetuar abusos de discreción y poder por parte de las autoridades que custodian a los reclusos. De igual forma, el acceso a recursos legales es imperativo para poder plantear un remedio post-sentencia cuando fuese meritorio. Lógicamente,

---

[55] Art. VI(4), *Reglamento Acceso a Recursos Legales*, 14 de diciembre de 2016.
[56] Íd.

ello forzosamente excluye el <u>derecho</u> a servicios dirigidos a fines que no sean el acceso inmediato a los tribunales, toda vez que ni la ley habilitadora del Departamento de Corrección ni los reglamentos aplicables lo contemplan como un derecho.

En este caso, queda patentemente claro que el peticionario no intentaba acceder a los foros judiciales mediante las referidas cartas. Por lo tanto, resulta forzoso concluir que la denegatoria de reproducir las cartas del peticionario no pudo menoscabar el derecho de acceso a las cortes. Como observamos, es evidente que el peticionario no intentaba acceder a los tribunales o pretendía tener acceso a un proceso de naturaleza judicial. Por consiguiente, no era un derecho susceptible de ser violado por el Departamento de Corrección. **Es decir, en la medida en que el señor Pérez López no intentaba reproducir un documento cuyo fin inmediato fuese de acceder a las cortes, este no ejercía el derecho que reclama.** En vista de ello, no tenía derecho a la reproducción mediante fotocopia de sus misivas, tal y como aduce.

La ausencia de un derecho a fotocopiar documentos que no están dirigidos a un tribunal no es óbice para que el Departamento de Corrección, dentro del ejercicio de su sana discreción reglamentaria, pueda honrarle ese pedido, pues ciertamente, puede hacerlo, de la misma forma que puede denegarlo, cuando así lo entienda prudente y guiado por el

criterio de razonabilidad. Es decir, del estado de derecho vigente se desprende que el Superintendente posee un marco de discreción para permitir o denegar el uso de la fotocopiadora para reproducir cualquier otro tipo de documento no dirigido a un tribunal. Resolver lo contrario daría al traste con la discreción expresamente conferida por la Asamblea Legislativa. A su vez, ello propendería al uso irrestricto de los recursos limitados del estado para reproducir cualquier documento que se alegue tenga el potencial de estar relacionado a un posible pleito judicial.

En el análisis sobre el alcance de la facultad discrecional del Departamento de Corrección para promulgar y aplicar sus normas de administración interna, nos vemos compelidos a puntualizar que la discreción del Superintendente no puede anteponerse o restringir derechos reconocidos en nuestro ordenamiento constitucional o estatutario. En el contexto fáctico pertinente, reafirmamos que el Superintendente carece de discreción para impedir la reproducción de escritos de un confinado dirigidos a un tribunal o a su representación legal, o que le sean requeridos como parte de un proceso judicial, toda vez que ello infringiría su derecho a acceder al sistema judicial para vindicar sus reclamos. Además, la reproducción de **mociones** es necesaria para que el confinado pueda notificar debidamente copias de sus escritos a todas las partes en el litigio, así como a los tribunales y a la Secretaría del

foro correspondiente. De esta forma, armonizamos el claro texto del marco jurídico aplicable, respetando así la intención legislativa y reglamentaria que le ha sido delegada al Departamento de Corrección. Asimismo, honramos un postulado fundamental del derecho, de facilitar el acceso a las cortes a todos los miembros de la población correccional, en estricto cumplimiento con la política pública que instituye nuestra Constitución en su Art. VI, Sec. 19.

Conforme al estado de derecho vigente que hemos enunciado, resolvemos que el Departamento de Corrección actuó correctamente dentro de la discreción conferida por el *Reglamento*. A su vez, concluimos que la decisión agencial no infringió derecho constitucional o estatutario alguno del peticionario. En consecuencia, colegimos que el Tribunal de Apelaciones actuó correctamente habida cuenta de que al peticionario no le asistía causa de acción alguna que surgiera bajo el palio de la Constitución o las leyes de Puerto Rico.

## IV.

Por los fundamentos que anteceden, se confirma la determinación del Tribunal de Apelaciones. En consecuencia, se sostiene la determinación del Departamento de Corrección y Rehabilitación de Puerto Rico.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gabriel Pérez López<br><br>**Peticionario**<br><br>v.<br><br>Departamento de Corrección<br>y Rehabilitación<br><br>**Recurrido** | CC-2019-0668 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de enero de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la que se hace formar parte íntegra de la presente Sentencia, se confirma la Sentencia del Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con opinión escrita a la que se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gabriel Pérez López<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | CC-2019-0668 | Certiorari |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ, a la cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 25 de enero de 2022.

Mediante el dictamen que hoy instrumenta una mayoría de este Tribunal, desaprovechamos la oportunidad de precisar razonablemente los contornos del ámbito discrecional que confiere un reglamento al superintendente de una institución carcelaria. En cambio, bajo el palio de una deferencia desmesurada y prácticamente irrestricta, este Tribunal validó la potestad absoluta de tal figura sobre la capacidad de un confinado a fotocopiar ciertos documentos. Ello, a través de una diferenciación altamente puntillosa de lo que constituye o no un escrito de naturaleza legal.

A mi juicio, correspondía que este Tribunal resolviera, en primer lugar, que el ejercicio de tal discreción por parte del superintendente de la institución carcelaria está, en

efecto, sujeta a la revisión judicial. Asimismo, en segundo lugar, procedía que tal disposición reglamentaria fuese descartada por rebasar los límites de la razonabilidad e incluso interferir con el ejercicio de un derecho constitucional.

Ante el rechazo de la Mayoría a que las determinaciones de un superintendente a estos fines sean revisables y por entender que la determinación que hoy se imparte hace aún más inaccesible el servicio de fotocopias para aquellos privados de su libertad, disiento. Por consiguiente, procedo a expresar las razones para mi postura, no sin antes exponer la narrativa fáctica e inédita de la controversia.

**I**

El Sr. Gabriel Pérez López (señor Pérez López), quien se encuentra privado de su libertad en una institución penal del país, presentó una Solicitud de remedio administrativo ante el Departamento de Corrección y Rehabilitación (Corrección). En ésta, relató que acudió a la biblioteca con la intención de fotocopiar ciertas cartas legales,[1] pero que allí, una bibliotecaria denegó el servicio y le informó que sólo se fotocopiaban mociones legales con el permiso previo

---

[1] El Sr. Gabriel Pérez López describió los documentos como cartas legales dirigidas a ciertos funcionarios de las Ramas Ejecutivas y Legislativas, con el fin de que "de parte del Gobierno se atiendan asuntos de [su] confinamiento y calidad de vida". Indicó que se trata de copias que necesita por si las originales se extravían o se traspapelan, en caso de que las necesite como evidencia "como parte de agotamiento de las ayudas que [ha] solicitado". Véase, Solicitud de remedio administrativo.

del superintendente. El señor Pérez López argumentó que tal actuación violó su derecho de acceso a la justicia.

Haciendo referencia a la <u>Respuesta del área concernida/superintendente</u>, Corrección respondió que la bibliotecaria en cuestión indicó que solamente se pueden fotocopiar mociones legales y que el duplicado de cualquier otro tipo de documento debe ser autorizado por el superintendente.

Inconforme, el señor Pérez López solicitó la reconsideración. En primer lugar, objetó que Corrección permitiera que una de las personas involucradas en la situación emitiera la respuesta a su reclamo. En segundo lugar, planteó que los reglamentos tienen que ser cónsonos con los derechos de los confinados, por lo que razonó que la autorización para fotocopiar mociones y otros documentos no puede descansar en la sola discreción del superintendente.

En respuesta, Corrección denegó la solicitud de reconsideración e insistió en que, por disposición reglamentaria, el superintendente tiene la discreción para autorizar la reproducción de mociones. Concluyó que la petición era académica, toda vez que la superintendencia ya había denegado el pedido del señor Pérez López.

En desacuerdo, el señor Pérez López presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. Arguyó que Corrección falló en proveerle un acceso real y adecuado a sus servicios bibliotecarios y, consecuentemente, a los tribunales. Reafirmó que el servicio de fotocopia debe estar

a la disposición de los confinados y no sujeto a la discreción del superintendente, pues los procedimientos ante los tribunales requieren la notificación de múltiples copias.

Trabada así la controversia, el foro apelativo intermedio emitió una sentencia mediante la cual desestimó el recurso por falta de jurisdicción. Determinó que la decisión recurrida no era revisable, pues no existía un dictamen adjudicativo, sino más bien una respuesta informativa sobre un asunto administrativo que caía dentro de la discreción de Corrección.

Todavía inconforme, el señor Pérez López presentó un recurso ante este Tribunal. En éste, planteó que el servicio de fotocopias no debe estar sujeto a la discreción del superintendente, pues ello soslaya los derechos de los confinados a tener un acceso libre a la justicia y a los tribunales.

Por su parte, Corrección presentó un alegato.[2] En éste, argumentó que el señor Pérez López no demostró que la falta de estas copias fuera a tener un impacto sustancial en sus derechos. Razonó que la cuestión no ameritaba la intervención judicial, pues se trataba de un cuestionamiento hipotético al reglamento.

---

[2]Corrección compareció a través del Procurador General. Previo a presentar su alegato, éste instó una Moción informativa y solicitud de desestimación mediante la cual alegó que procedía la desestimación del recurso porque el señor Pérez López no había presentado su alegato. Tras un breve término concedido por este Tribunal, el señor Pérez López solicitó que se tomara su petición de certiorari como su alegato.

Expuesta así la narrativa fáctica del caso, veamos el Derecho aplicable a la controversia.

**II**

**A.**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de aquellas facultades que le fueron delegadas por ley. Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1015 (2008). Asimismo, viabiliza el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley", de modo que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". Íd.

Por tal razón, el Art. 4.006 de la Ley de la Judicatura, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y, dispone que, por conducto del recurso de revisión judicial, se revisarán las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas. Ello, de acuerdo con el procedimiento instaurado en la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 et seq. (LPAU). Por su parte, la LPAU reitera lo anterior.[3] A su vez, enfatiza el derecho que tiene la parte que se vea afectada por una orden o resolución final

---

[3]Véase, 3 LPRA sec. 9671.

de una agencia administrativa y que, a su vez, haya agotado todos los remedios provistos por ésta, de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones. 3 LPRA sec. 9672.

Por lo cual, de dichos estatutos se desprende que para ser revisable la determinación de la agencia debe ser, en primer lugar, final y no interlocutoria. En segundo lugar, para hacer efectivo su derecho a la revisión judicial, la parte adversamente afectada debe haber agotado los remedios provistos por la agencia. Depto. Educ. v. Sindicato Puertorriqueño, 168 DPR 527, 543 (2006). Sólo de esta forma los tribunales evitan una intromisión indebida y a destiempo en el trámite administrativo. Comisionado de Seguros v. Universal, 167 DPR 21, 29 (2006).

Conforme ya ha pautado este Tribunal, una determinación final se caracteriza por lo siguiente: (1) la actuación de la agencia representa la culminación de su proceso decisorio, y (2) la actuación administrativa determina todos los derechos y las obligaciones de las partes o surgen de ésta consecuencias legales. Depto. Educ. v. Sindicato Puertorriqueño, supra. Es decir,

> [p]ara interponer el recurso, la decisión administrativa tiene que ser 'final' y además debe ser revisable. La decisión administrativa es final cuando ha decidido todas las controversias y no deja pendiente ninguna para ser decidida en el futuro. Es revisable cuando la parte afectada por ella haya cumplido con todos los requisitos y haya agotado todos los remedios administrativos disponibles". Tosado v. A.E.E., 165 DPR 377, 384-85 (2005) (citando a D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento

Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, Sec. 9.3, pág. 533.).

Por consiguiente, "[l]a revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de esta Ley". Íd. Asimismo, por mandamiento estatutario, los procedimientos de esta índole deben ser de fácil acceso a los ciudadanos, como también económicos y efectivos. 3 LPRA sec. 9674. En consecuencia, deben evitarse las desestimaciones, ya sea por defectos de forma o de notificación, y se debe permitir la comparecencia efectiva de recurrentes por derecho propio y en forma pauperis. Íd.

Por otro lado, el Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional, Reglamento Núm. 8583 de 4 de mayo de 2015, se creó con el fin de atender los asuntos relacionados al confinamiento y habilitar a la División de Remedios Administrativos para actuar sobre cualquier agravio o queja de los confinados, incluyendo el uso de la biblioteca para fines recreativos. En lo pertinente a esta controversia, el Artículo XV del reglamento precitado dispone que, tras una determinación inicial y una reconsideración que le resultase adversa, el confinado puede solicitar la revisión de la determinación administrativa ante el Tribunal de Apelaciones.

Cónsono con ello, el propio cuerpo normativo del Tribunal de Apelaciones indica que su función revisora se ejerce sobre las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios o funcionarias, ya sea en su función adjudicativa o cuasi legislativa. Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 56.

En lo pertinente a este caso, este Tribunal ha expresado que, al momento de evaluar las actuaciones administrativas, corresponde determinar si las mismas se ajustan al ámbito prescrito en su ley habilitadora o la Constitución. IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 756 (2012). Incluso, aun reglamentos creados dentro de los márgenes del estatuto orgánico de la agencia no gozan de validez automática, pues las reglas promulgadas por una agencia no pueden ser caprichosas ni arbitrarias. López Leyro v. ELA, 173 DPR 15, 25 (2008).

Ahora, en el cumplimiento del mandato de revisión judicial, si bien los tribunales revisores están llamados a conceder deferencia amplia a las determinaciones de las agencias administrativas, tal norma no es absoluta. En otras palabras, no puede imprimírsele un sello de corrección bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho. Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la

Infraestructura de Puerto Rico, 2021 TSPR 45 (citando a Graciani Rodríguez v. Garage Isla Verde, LLC, 202 DPR 117, 126 (2019)).

Finalmente, al ejecutar nuestra función revisora, es imperativo recordar que los tribunales deben ser "sensibles a la realidad de los distintos componentes de nuestra sociedad", incluyendo los confinados. Álamo Romero v. Adm. Corrección, 175 DPR 314, 322 (2009). Esto, pues, la propia Ley de la Judicatura nos impone la responsabilidad de propiciar a la ciudadanía el acceso inmediato y económico a un sistema de justicia que es sensible a la realidad de los distintos miembros de la sociedad. Exposición de Motivos de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico 2003 (2003 LPR 971); Fraya v. A.C.T., 162 DPR 182, 189 (2004). Consecuentemente, en nuestro ordenamiento prevalece una política de apertura a los tribunales que fomenta la atención en los méritos de los recursos ante nuestra consideración. Por tal razón, este Tribunal ha sido enfático "en torno a la necesidad de evitar que la aplicación automática e inflexible de los requisitos reglamentarios prive a un litigante de su derecho de acceso a los tribunales". Álamo Romero v. Adm. Corrección, supra; Gran Vista I v. Gutiérrez Santiago y otros, 170 DPR 174, 181 (2007).

**B.**

Como se sabe, en la Sección 19 de su Artículo VI, nuestra Constitución consagra la política pública de "reglamentar las

instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". A la luz de este mandato, se creó la Administración de Corrección,[4] a la cual le fueron conferidos aquellos poderes necesarios para "maximizar la probabilidad de rehabilitación del delincuente, y para viabilizar su pronta reintegración al núcleo familiar y a la comunidad como ciudadano productivo y respetuoso de la ley". Posteriormente, se promulgó el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2-2011, según enmendado, 3 LPRA Ap. XVIII, el cual retuvo el objetivo de entablar procesos de rehabilitación moral y social a favor de los confinados para fomentar su reincorporación a la sociedad.

En lo pertinente a esta controversia, el Plan de Reorganización estableció entre las facultades, funciones y deberes del Secretario el

> adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA Ap. XVIII, Art. 7(aa).

---

[4]Ley Orgánica de Administración de Corrección, Ley Núm. 116-1974, según enmendada, 4 LPRA sec. 1111 (derogada).

Al amparo de tal delegación, Corrección creó y difundió ciertos manuales y reglamentos mediante los cuales instauró la disponibilidad de una biblioteca en sus instituciones penales y reguló sus usos para beneficio de los confinados. Por ejemplo, en la sección VI de la Primera Parte del Manual de orientación: derechos y obligaciones de la población correccional, AC-DER-001 de 23 de abril de 1999, se reconoce que "[l]os miembros de la población correccional tendrán acceso a una biblioteca con material y referencia legal". En su Segunda Parte, sección I, inciso (G), se dispone que los confinados tienen derecho "a usar los materiales de referencia disponibles en la biblioteca legal para ayudarle a resolver cualquier duda o problema legal".

Por otra parte, el Manual de normas y procedimientos de servicios bibliotecarios en instituciones correccionales del Departamento de Corrección y Rehabilitación, Manual Núm. DCR-2016-10 de 14 de diciembre de 2016 (Manual), indica que el servicio bibliotecario a la población correccional "se ofrece de conformidad con las necesidades de los miembros de la población correccional y normas de seguridad". En lo que concierne a esta controversia, la sección VI, inciso 4, impone el deber de que los recursos disponibles en la biblioteca sean suficientes para asistir a los confinados en los procesos legales relacionados a: cuestionar la validez de su convicción o confinamiento; buscar remedios a alegadas condiciones ilegales de su confinamiento; buscar remedio en relación a

asuntos de naturaleza civil; y asegurar cualquier otro derecho protegido constitucionalmente.

Finalmente, el Artículo V del Reglamento Acceso a Recursos Legales de 30 de abril de 2010, reitera la política de Corrección de proveer a los confinados "acceso a los tribunales y servicios legales que sean necesarios para la protección de sus derechos constitucionales y legales". A su vez, en su Artículo VI, dispone que proveerá a los miembros de la comunidad penal aquellos "recursos adecuados que les faciliten la consecución de sus derechos y trámites de los procesos legales".

Tales políticas se anclan en la obligación de las instituciones penales de poner a la disposición de los confinados una biblioteca legal y sus recursos. Esta obligación surge del derecho que poseen los miembros de la población corrección de acceso a las cortes.[5]

En su definición más simple, el derecho de acceso a las cortes abarca todos los medios que un acusado o peticionario pueda requerir para un juicio justo en los cargos traídos en

---

[5]En Christopher v. Harbury, 536 US 403, 415 (2002), la Corte Suprema de Estados Unidos reconoció que la fuente de tal derecho es imprecisa, pues, a través de su jurisprudencia, esta misma ha citado diversas cláusulas de la Constitución de los Estados Unidos como la base del derecho de acceso a las cortes, entre éstas: la cláusula de privilegios e inmunidades, la primera enmienda, las cláusulas de debido proceso de ley y la de igual protección de las leyes.

su contra o los agravios que éste puede tener.[6] A nivel federal, ya desde Ex parte Hull, 312 US 546 (1941), Johnson v. Avery, 393 US 483 (1969) y Younger v. Gilmore, 404 US 15 (1971) (Per curiam), la Corte Suprema de los Estados Unidos había reconocido consistentemente a favor de los confinados el derecho a un acceso significativo a las cortes y, a su vez, el deber del estado de no interferir con ello.[7]

Así lo reiteró en Bounds v. Smith, 430 US 817, 821 (1977), donde expresó que la jurisprudencia federal ya había establecido más allá de toda duda que los confinados tienen derecho al acceso a las cortes. Asimismo, debido a la importancia trascendental de tal derecho, afirmó que los estados estaban obligados a "shoulder affirmative obligations to assure all prisoners meaningful access to the courts". Íd., pág. 824. Entiéndase, reconoció que el alcance del derecho de un confinado a las cortes impone al estado, no sólo el deber de no interferir con tal ejercicio, sino también la obligación de facilitarlo.[8]

---

[6]J.M. Hill, An Overview of Prisoners' Rights: Part I, Access to the Courts Under Section 1983, 14 St. Mary's L.J. 957, 961 (1983).

[7]J.A. Schouten, Not So Meaningful Anymore: Why A Law Library Is Required to Make A Prisoner's Access to the Courts Meaningful, 45 Wm. & Mary L. Rev. 1195, 1199 (2004).

[8]C.E. Smith, The Malleability of Constitutional Doctrine and Its Ironic Impact on Prisoners' Rights, 11 B.U. Pub. Int. L.J. 73, 88 (2001). Ahora, es preciso adelantar que las cortes estatales y federales han interpretado consistentemente que el derecho de acceso a la justicia incluye el derecho a los recursos necesarios para preparar sus materiales legales. Sin embargo, "in keeping with the holding in Bounds that access to the

En consecuencia, la Máxima Corte federal resolvió que "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law". Bounds v. Smith, supra, pág. 828.

Posteriormente, en Lewis v. Casey, 518 US 343, 355 (1996), la Corte Suprema federal aclaró que las herramientas que los estados deben suplir se limitan a aquellas que los confinados necesiten para atacar con reclamos no frívolos sus sentencias, directa o colateralmente, y para cuestionar las condiciones de su confinamiento.[9] Así, pautó que un confinado

---

courts only be "meaningful" and "adequate," permitted prison officials to put **reasonable restrictions on this right**. Indigent prisoners have no right to unlimited supplies of paper, nor do they have the right to **unlimited free** postage or photocopying." (Énfasis suplido). J.W. Snyder, Jr., Inmate Access to Prison Computers for Legal Work and the Right of Access to the Courts: Bryant v. Muth, 72 N.C. L. Rev. 1692, 1704-05 (1994).

[9] En esencia, Lewis v. Casey, supra, aclara que Bounds v. Smith, supra, no estableció un derecho afirmativo a una biblioteca legal o asistencia de esta naturaleza, sino que reconoció nuevamente el derecho de acceso a las cortes. Su efecto neto fue que la Corte "recast the right merely as a right to bring the grievance the prisoner wishes to present." M. Grandinetti, Ensuring Access to Justice for Non-English-Speaking Criminal Defendants: Denial of Access to Other-Language Legal Materials or Assistance As an Extraordinary Circumstance for Equitable Tolling, 38 Seton Hall L. Rev. 1479, 1489 (2008). Ahora, aunque bajo la jurisprudencia de la Corte Suprema federal no existe un derecho positivo de acceso a una biblioteca legal, los confinados deben poseer la capacidad para presentar sus reclamos ante las cortes, conforme el caso de Lewis v. Casey, supra, sujeto al estándar de razonabilidad de Turner v. Safley, infra. Íd., pág. 1491.

que alega una violación a su derecho de acceso a las cortes debe demostrar un perjuicio real,[10] de modo que se pruebe que las limitaciones en la biblioteca institucional o la ayuda legal disponible entorpecieron o dificultaron sus esfuerzos para perseguir un reclamo legal válido. Íd., pág. 351.

Ciertamente, el caso precitado tuvo el efecto de limitar la responsabilidad afirmativa de proveer una biblioteca adecuada y asistencia legal a los confinados a que sólo se trate de un acceso significativo.[11] Ahora, citando a Turner

---

[10]El estándar de perjuicio claro se puede demostrar cuando un reclamo que se pierde, es rechazado u obstruido. The "actual injury" requirement, 3 Rights of Prisoners sec. 12:8 (5th ed.) (citando a Myers v. Hundley, 101 F.3d 542, 545 (8th Cir. 1996). Por consiguiente, el estándar de daño puede alcanzarse si la obstrucción impidió que el confinado litigara su reclamo. Así, aunque un confinado no pueda probar que perdió su caso debido a las interferencias de las instituciones penales, puede demostrar el claro perjuicio si reclamo fue obstruido por ellas. Walters v. Edgar, 163 F.3d 430, 434-35 (7th Cir. 1998).

Cónsono con ello, aunque Christopher v. Harbury, supra, no trata específicamente sobre acceso a las cortes dentro del contexto de la insuficiencia de una biblioteca u otras deficiencias de una institución penal, la opinión descansa principalmente en Lewis v. Casey, infra. Debido a ello, comentaristas han planteado que tal caso establece que "cases that were inadequately tried or settled, **or where a particular kind of relief could not be sought, as a result of officials' actions, could amount to denials of court access,** in addition to those that were dismissed or never filed." (Énfasis suplido). J. Boston, Overview of Prisoners' Rights, 145-146 (2014): https://law.loyno.edu/sites/law.loyno.edu/files/Boston%20 PLRA%20Overview%20Nov%202013.pdf.

[11]Independientemente de la limitación impuesta por Lewis v. Casey, supra, es importante destacar que, aunque

in meeting the requirements defined in Lewis, plaintiffs will be constrained to define exactly how their access to court will be impeded if they are denied

v. Safley, 482 US 78 (1987), Lewis v. Casey, supra, pág. 361,

afirmó que un reglamento institucional es válido si está

**razonablemente    relacionado    a    intereses    penológicos**

**legítimos.**[12] Por consiguiente,

> a regulation cannot be sustained where the logical
> connection between the regulation and the asserted
> goal is so remote as to render the policy arbitrary
> or irrational. Moreover, the governmental objective
> must be a legitimate and neutral one. […] A second
> factor relevant in determining the reasonableness
> of a prison restriction […] is whether there are
> alternative means of exercising the right that
> remain open to prison inmates. […] A third
> consideration is the impact accommodation of the
> asserted constitutional right will have on guards
> and other inmates, and on the allocation of prison
> resources generally. […] But if an inmate claimant
> can point to an alternative that fully accommodates
> the prisoner's rights at de minimis cost to valid
> penological interests, a court may consider that as
> evidence that the regulation does not satisfy the

---

law library services. While that task may be difficult,
it may not be impossible.

Nor should Lewis be taken as the "last word" on
how courts ought to analyze access-to-court issues.
**Bounds v. Smith remains good law, and the mode of
analysis in Bounds is arguably as valid as that in
Lewis.** In any case, **it is evident that the future
viability of access-to-court cases, and specifically
those cases seeking systemic improvement of law library
services, will depend in large measure on whether courts
choose to adopt the reality-based approach of Bounds or
the more circumscribed approach of Lewis.**

Certainly, the importance to prisoners of the right
of access to court has not been diminished. Indeed, now
more than ever, **access to court continues to be "the
most fundamental right" that a prisoner holds.**" (Énfasis
suplido). J. L. Gerken, Does Lewis v. Casey Spell the
End to Court-Ordered Improvement of Prison Law
Libraries?, 95 Law Libr. J. 491, 513 (2003).

[12]Según Jones v. North Carolina Prisoners' Labor
Union, Inc., 433 US 119, 128 (1977), el estándar de
análisis    para    reglamentos    sobre    operaciones
institucionales debe ser razonable, pues uno estricto
"would seriously hamper their ability to anticipate
security problems and to adopt innovative solutions to the
intractable problems of prison administration".

reasonable relationship standard. <u>Turner v. Safley</u>, supra, pág. 89-91.

En consecuencia, al aplicarse este estándar a una controversia sobre una violación al acceso a las cortes por la vía de una reglamentación, debe interpretarse que

> The operation of prison law library or legal assistance programs is governed by the "reasonable relationship" standard, which lets prison officials adopt whatever practices or restrictions they choose **as long as they are reasonably related to legitimate penological interests. That means that even if restrictions do cause actual harm to prisoners' litigation, they don't violate the right of court access if they are reasonably related to legitimate ends.**[13] (Énfasis suplido).

A la luz de esta realidad, los circuitos apelativos a nivel federal han armonizado estos precedentes permitiendo restricciones en el acceso del confinado a recursos legales con el fin de acomodar preocupaciones administrativas legítimas, tales como: la seguridad y el orden interno de la institución penal; prevenir la introducción de contrabando; prevenir que usuarios regulares dominen los servicios bibliotecarios, y observar las restricciones presupuestarias.[14]

Asimismo, y en lo pertinente a este caso, tanto cortes de circuito como estatales han determinado que las instituciones penales no están obligadas a proveer a los confinados acceso gratuito o ilimitado a una fotocopiadora,

---

[13]J. Boston, <u>op. cit.,</u> pág. 149.

[14]<u>Substantive Rights Retained by Prisoners</u>, 38 Geo. L.J. Ann. Rev. Crim. Proc. 967, 967-69 (2009).

particularmente si existen otras alternativas adecuadas. Sin embargo, sí es necesario que exista alguna medida de acceso razonable a una fotocopiadora para proteger el derecho de acceso a las cortes e, incluso, que es irrazonable una política institucional que no permita a los confinados sacar fotocopias cuando éstos están dispuestos a pagar por ellas y tienen los fondos para ello.[15]

Las determinaciones con respecto a reclamos de esta índole deben obedecer la realidad imperante de que la disponibilidad de recursos bibliotecarios y asistencia legal en instituciones penales generalmente constituye el único medio a través del cual los confinados pueden obtener acceso a las cortes.[16] Debido a los retos únicos que presenta el confinamiento dentro del contexto del acceso a la justicia, los confinados dependen del sistema institucional penal para tener a su alcance los recursos legales necesarios. No puede ser para menos, pues, a causa del aislamiento inherente a la condición penal,

> litigation is one of the few means by which prisoners can bring public attention to serious health and safety risks, including inadequate health care, widespread violence, sexual assault, and unsafe environmental conditions. Litigation is

---

[15]72 CJS Prisons sec. 113; Johnson v. Parke, 642 F.2d 377 (10th Cir. 1981); Robbins v. South, 595 F. Supp. 785 (D. Mont. 1984); Harrell v. Keohane, 621 F.2d 1059 (10th Cir. 1980); Giles v. Tate, 907 F. Supp. 1135 (S.D. Ohio 1995); Hendricks v. South Carolina Dept. of Corrections, 385 S.C. 625, 686 S.E.2d 191 (2009).

[16]J. Feierman, "The Power of the Pen": Jailhouse Lawyers, Literacy, and Civic Engagement, 41 Harv. C.R.-C.L. L. Rev. 369, 370 (2006).

also generally the only avenue available to a prisoner seeking to overturn a wrongful sentence of incarceration or even death.[17]

Por consiguiente, "[f]or a prisoner without the ability to attain counsel […] anything less than a law library or an alternative form of legal assistance (beyond making sure the prisoner's complaints get out the door) meant that prisoners were barred from having meaningful access to the courts".[18]

En nuestra jurisdicción, la suficiencia de los servicios bibliotecarios fue objeto del acuerdo alcanzado en <u>Morales Feliciano v. Fortuño Burset</u>, Court Case No. 3:79-cv-00004 ante la Corte Federal del Distrito de Puerto Rico. En lo pertinente, se acordó que, como parte del acceso a las cortes:

> 13. All members of the Plaintiff Class shall be granted adequate, effective and meaningful access to courts.
> 14. All DCR libraries will be open from Monday to Friday, at least, for six hours a day, at hours that meet the needs of the inmates at each institution. The operating hours of the library shall be posted outside the library and in all inmate housing units.
> 15. All libraries shall provide inmates with paper, pencils, pens and envelopes, as well as provide access to typewriters and/or computers, and all other materials necessary to write correspondence and draft legal documents. Photocopies and postage stamps will be made available for sale to all inmates, but will be provided to indigent inmates at no cost to them.

En fin, el ordenamiento que impera exige que los confinados tengan una oportunidad razonablemente adecuada de

---

[17]Íd.

[18]J.A. Schouten, <u>Not So Meaningful Anymore: Why A Law Library Is Required to Make A Prisoner's Access to the Courts Meaningful</u>, 45 Wm. & Mary L. Rev. 1195, 1208 (2004).

traer sus reclamos ante las cortes.[19] Si bien el alcance de este derecho constitucional es limitado, las instituciones penales tienen la responsabilidad de facilitarlo y de no interferir con el mismo.[20]

Expuesto el derecho aplicable, procedo a discutir cómo éste fundamenta mi disenso.

**III**

En su petición ante este Tribunal, el señor Pérez López objeta la desestimación de su recurso y sostiene que el Tribunal de Apelaciones ignoró el impacto que el reglamento impugnado tiene sobre sus derechos, particularmente en su acceso a los tribunales y a los servicios bibliotecarios dentro de la institución penal. Afirma que el superintendente no debe tener discreción absoluta sobre la capacidad de los confinados para fotocopiar sus documentos de índole legal. Tiene razón.

Por su parte, Corrección no hace un esfuerzo concreto de defender el reglamento o la magnitud de la discreción concedida al superintendente. De hecho, sólo se limita a cuestionar el derecho del señor Pérez López a objetar la aplicación del reglamento, pues, según la agencia, éste no demostró que se coartara su acceso a los tribunales. No obstante, no sólo la mayoría de este Tribunal adoptó la postura de Corrección y descartó el derecho del señor Pérez

---

[19]Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000).

[20]Íd.

López para impugnar la validez de este reglamento, sino que afirmó la visión restrictiva del Tribunal de Apelaciones con respecto a su propia jurisdicción. Veamos.

Según se relató, el señor Pérez López acudió a la biblioteca para fotocopiar ciertos documentos, pero le fue denegado el servicio bajo el argumento de que ello está condicionado a la discreción del superintendente y al tipo de documento que se interesa duplicar. En consecuencia, el señor Pérez López solicitó la concesión de un remedio con respecto a la disponibilidad del servicio de fotocopias.

Corrección denegó la procedencia de un remedio y, posteriormente, reafirmó su determinación durante la fase de reconsideración. Es decir, el ente administrativo finalizó el trámite de ambos reclamos al determinar que el superintendente tiene discreción sobre la autorización de fotocopias. De esta manera, concluyó que el señor Pérez López no tenía derecho a remedio alguno, poniendo fin a la petición de éste. Ante ello, el señor Pérez López prosiguió con solicitar la revisión judicial de la determinación administrativa.

Conforme ya se discutió, la revisión judicial tiene como catalizador el agotamiento de remedios administrativos y se extiende a toda determinación administrativa que sea final. Entiéndase, si el dictamen pone fin a la controversia ante la agencia y la parte afectada utiliza sin éxito todos los mecanismos provistos por el organismo para cuestionar tal determinación, se activa el derecho a solicitar que un

tribunal apelativo ejerza su facultad revisora sobre la decisión administrativa.

De entrada, no cabe duda de que nos encontramos ante una determinación administrativa que es final. En primer lugar, la decisión no dejó algún asunto pendiente de resolución ante la agencia. En segundo lugar, el dictamen expresamente denegó que el señor Pérez López tuviera derecho a remedio alguno. Dicho de otro modo, el ente administrativo adjudicó que, por disposición reglamentaria, no procedía conceder al señor Pérez López acceso a la fotocopiadora.

Asimismo, también es evidente que el señor Pérez López cumplió a cabalidad con culminar el procedimiento administrativo previo a solicitar la intervención de los tribunales revisores. Según el precitado Reglamento Núm. 8583, el trámite administrativo ante Corrección inicia cuando el confinado presenta una solicitud de remedio administrativo sobre cualquier asunto relacionado a su confinamiento, incluyendo aquellos relacionados al uso de la biblioteca y los materiales en ésta. De estar inconforme con la respuesta de Corrección, el confinado debe solicitar la reconsideración y, consecuentemente, el cauce administrativo culmina con la determinación de Corrección con respecto a ésta. En consecuencia, de estar todavía en desacuerdo, el confinado entonces tiene a su disposición el remedio de la revisión judicial, el cual se manifiesta mediante un recurso presentado ante el Tribunal de Apelaciones.

Según se desprende del tracto procesal reseñado, el señor Pérez López siguió el trámite reglamentario y, en efecto, agotó los remedios disponibles a nivel administrativo, de modo que superó los obstáculos que hubieran podido impedir la revisión judicial. Por lo cual, la determinación de Corrección con respecto a la solicitud del señor Pérez López es revisable por la vía judicial.

No obstante, el Tribunal de Apelaciones descartó los elementos básicos de una determinación susceptible a la revisión y optó por engranarse en un ejercicio de autolimitación judicial excesivamente amplio. Anclando su decisión en una supuesta ausencia de jurisdicción sobre determinaciones relacionadas a la discreción de un funcionario, el foro apelativo intermedio desestimó el recurso del señor Pérez López sin revisar la razonabilidad de la respuesta de Corrección, conforme exige el ordenamiento que rige.

Un dictamen que resulta en la denegación de un remedio y rechaza, sin más, la existencia de una situación que afecta el confinamiento del peticionario es, por su propia naturaleza, un dictamen adjudicativo, pues resuelve con respecto a los derechos que le amparan al confinado y las obligaciones que tiene Corrección en cuanto a éstos. Es decir, la determinación es adjudicativa y, por ende, revisable, aun cuando tal dictamen se fundamente meramente en que el asunto recae dentro de la discreción de un funcionario. Son la corrección de tal conclusión y la razonabilidad de la amplitud

otorgada a la discreción del superintendente mediante el reglamento lo que, precisamente, correspondía al Tribunal de Apelaciones, y a este Tribunal, atender a nivel de revisión judicial.

Recuérdese, la revisión judicial tiene el propósito de garantizar, no sólo que las agencias administrativas actúen dentro de los márgenes de aquellas facultades que le fueron delegadas, sino también de asegurar que los ciudadanos tengan un foro al cual acudir para vindicar sus derechos y obtener un remedio frente a las actuaciones de las agencias. Al amparo del principio de apertura de los tribunales, es la responsabilidad de los foros revisores salvaguardar tal derecho y atender los casos en los méritos con especial atención y sensibilidad a las realidades de aquellas personas que acuden a los tribunales en busca de auxilio.

Ahora, teniendo ante su consideración un claro ejercicio de autolimitación extremo por parte del Tribunal de Apelaciones, así basado en una lectura errada de la jurisprudencia aplicable que, a su vez, privó a una parte de su derecho a que su reclamo fuera atendido en los méritos, este Tribunal se rehusó a corregir tal situación. De hecho, la Mayoría va más allá y concluye que el señor Pérez López no sufrió un daño que justificara su cuestionamiento del reglamento. Se equivoca.

Conforme se indicó, a los confinados les ampara un derecho de acceso a las cortes, el cual impone a las instituciones penales el deber de no interferir

irrazonablemente con los esfuerzos de los confinados para así ejercerlo. Asimismo, bajo <u>Bounds v. Smith</u>, supra, éstas también tienen la obligación de tomar actos afirmativos para así propiciarlo, ya sea a través de una biblioteca o asistencia legal.

Así, al momento de atender un reclamo sobre la obstrucción de tal derecho, corresponde, en primer término, atender el requerimiento de legitimación activa que designó la Corte Suprema de los Estados Unidos en <u>Lewis v. Casey</u>, supra. En síntesis, éste requiere que se demuestre que: (a) el confinado sufrió o sufre un perjuicio al ser frustrado u obstruido de, (b) presentar un reclamo que no es frívolo y, (c) sobre su convicción o las condiciones de su confinamiento.

En el caso específico del señor Pérez López, éste solicitó los servicios bibliotecarios para fotocopiar unas cartas legales que dirigió a ciertos funcionarios públicos. Corrección denegó el servicio de fotocopias bajo el argumento de que los reglamentos pertinentes sólo permiten el duplicado de mociones legales cuando se justifique su necesidad, el confinado tenga fondos para pagarlas y, particularmente, que la solicitud sea autorizada por el superintendente de la institución.

En primer lugar, un estudio de los documentos cuya copia solicitó el señor Pérez revela que los mismos tienen el propósito de discutir varios aspectos de su confinamiento y solicitar la ayuda de funcionarios de las Ramas Ejecutivas y Legislativas para con ello. Entre otros asuntos, el señor

Pérez López mencionó en las cartas legales: la irregularidad de los permisos para visitas de sus familiares; la falta de orientación sobre asuntos relacionados a su plan institucional y la poca disponibilidad de programas para su rehabilitación; las razones por las que permanece en custodia máxima; quejas contra actuaciones de oficiales correccionales y otros funcionarios dentro de la institución; el incumplimiento con las disposiciones relacionadas a la recreación de los confinados; falta de disponibilidad de recursos y enseres; deficiencias en el trámite de quejas; y agravios con el sistema de bonificación en condenas de 99 años o más.[21] Es decir, bajo el propio estándar de <u>Lewis v. Casey</u>, supra, se trata de documentos dirigidos a obtener remedios con respecto a asuntos válidos, no frívolos, directamente relacionados a dimensiones medulares de su confinamiento.

En segundo lugar, el señor Pérez López explicó que su interés en las copias se debe a que está conformando un récord personal sobre las solicitudes que ha presentado en diversas ramas de gobierno sobre las condiciones de su confinamiento, orientadas a mejorar su calidad de vida y prospectos de rehabilitación. Ello, de modo que pueda tener evidencia del agotamiento de remedios para presentarlas, eventualmente, ante un tribunal.[22] Como cuestión de hecho, en todas sus

---

[21]Véase, Apéndice del recurso.

[22]Véase, nota al calce 1 de esta ponencia.

comparecencias a través de este procedimiento, el señor Pérez López ha sido contundente en su intención de llevar su reclamo hasta los tribunales de resultar infructuoso el agotamiento de todos los otros remedios a su alcance. Es decir, ello es parte de sus esfuerzos para lograr su acceso a la corte. Nos encontramos ante cartas de naturaleza legal que pueden ser válidamente utilizadas como anejos o prueba documental para un reclamo ante los tribunales. Lamentablemente, el formalismo extremista pautado coarta ese ejercicio consustancial a importantes garantías constitucionales.

Por consiguiente, al negar sus copias, la actuación de Corrección, en efecto, obstruyó la capacidad del señor Pérez López para entablar su reclamo. Ello, pues interfirió directamente con el ejercicio de compilación de evidencia documental presentada en diversos foros, el cual, como vislumbra el peticionario, culminará con toda probabilidad ante los tribunales. No se trata, pues, de un cuestionamiento hipotético como indica la Mayoría, toda vez que el señor Pérez López está activamente preparando su caso y su esfuerzo fue obstruido por una disposición reglamentaria con respecto al uso del recurso bibliotecario que requiere para ello.

Entiéndase, a mi juicio, quedó establecida la presencia de los requisitos para atender un recurso de esta índole bajo el análisis realista establecido en Bounds v. Smith, supra. En consecuencia, este Tribunal estaba en posición de analizar la razonabilidad del reglamento impugnado, en específico, el

inciso 6 del Artículo VI del Manual y el inciso 6 del Artículo XI del Reglamento, el cual dispone que:

> A discreción del superintendente, se les proveerán fotocopias de mociones preparadas por el miembro de la población correccional que tengan los fondos y justifiquen la necesidad de utilizar las mismas. El costo de las copias se establecerá mediante reglamentación a esos efectos, pero nunca será menos de $0.10 por copia, que será deducido de la cuenta del miembro de la población correccional, conforme los procedimientos establecidos.

> En caso de miembros de la población correccional indigentes, éstos solicitarán las copias de mociones al personal a cargo de la biblioteca, libre de costos, y en la solicitud indicará el propósito de esta petición. Esto será con previa autorización del superintendente o en quien él delegue.

Según la disposición reglamentaria aplicable, un confinado puede fotocopiar mociones legales si justifica la necesidad del duplicado y tiene fondos para sufragar los gastos de las mismas. Ello, sin embargo, también está bajo la discreción del superintendente.

De nuevo, los reglamentos administrativos relacionados al derecho de acceso a las cortes están sujetos a un análisis de razonabilidad. Las instituciones penales pueden imponer restricciones a la disponibilidad de recursos bibliotecarios, siempre y cuando éstas respondan a intereses penológicos legítimos, como lo son la seguridad y las restricciones presupuestarias.

En este caso, del Reglamento o el Manual no surge el propósito de la restricción al uso de la fotocopiadora, de modo que se justifique la discreción absoluta que le confiere al superintendente para autorizar o no el duplicado de un

documento legal. Como cuestión de hecho, Corrección tampoco articuló el raciocinio detrás de tal delegación de control sobre la capacidad de los confinados de hacer uso de la fotocopiadora, en particular cuando cumplen con los requisitos de justificar la necesidad y cuentan con los fondos para cubrir los gatos de las copias.

En consecuencia, la regla no permite identificar si la discreción del superintendente protege la seguridad y el orden de la institución o vela por restricciones presupuestarias. Es decir, contrario a lo que resuelve la Mayoría, este Tribunal nunca tuvo ante sí interés penológico legítimo y manifiesto que se viera servido por el veto absoluto del cual goza el superintendente sobre las copias que pueden obtener los confinados.

Como agravante, un análisis de la disposición impugnada tampoco revela el ejercicio de razonabilidad detrás de tal poder ni aclara los criterios para la impartición o la denegación del uso de la fotocopiadora. El resultado de tal delegación de autoridad absoluta propicia el ejercicio arbitrario, caprichoso e irregular de la facultad, incidiendo irrazonablemente sobre el derecho del confinado a no ver obstruidos sus esfuerzos a expresarse libremente sobre su confinamiento, mantener sus récords legales y buscar la reparación de sus agravios. Esto, pues, el ente contra el cual se expresa tiene control sobre su capacidad para canalizar su reclamo, máxime, cuando no existe una alternativa

viable para obtener el duplicado de los documentos que requieren.

En este caso, se desprende diáfanamente del expediente que las cartas cuya reproducción solicita el señor Pérez López, no sólo son cruciales para la consecución de sus reclamos, sino que las mismas tampoco representan una amenaza para la seguridad de la institución penal u otros confinados y sus derechos. Es decir, en presencia de la necesidad así justificada y la disponibilidad de fondos, y en ausencia de amenaza a la seguridad o recursos, este Tribunal debió concluir que no surge la razonabilidad de que el superintendente ostente la facultad de desautorizar la reproducción de un documento legal. Al decidir lo contrario, este Tribunal contribuyó a una concesión prácticamente irrestricta de deferencia a la discreción del superintendente en este aspecto, sin explicación alguna de su razonabilidad por parte de Corrección, y a una visión mucho más restringida de qué constituye una búsqueda de auxilio legal por parte de un confinado.

Valga aclarar que mi postura no descansa en que Corrección no puede restringir el uso de la fotocopiadora o que los miembros de la población correccional tienen derecho a un uso irrestricto de tal servicio. Según se indicó previamente, el deber de facilitar el acceso a las cortes para los confinados mediante la disponibilidad de recursos bibliotecarios puede ser restringido. Sin embargo, tales medidas restrictivas deben ser razonables y tienen que estar

fundamentadas en intereses legítimos que necesitan ser protegidos.

Aquí prevalece una ausencia marcada de una relación razonable entre la delegación absoluta de discreción al superintendente sobre la capacidad de los confinados de fotocopiar documentos y algún interés legítimo de Corrección. Por consiguiente, este Tribunal tenía que resolver que la disposición reglamentaria no sobrevive el análisis constitucional racional que exige el ordenamiento. No obstante, tal consideración está ausente en el dictamen mayoritario.

El derecho de acceso a las cortes es el más fundamental de los derechos que posee un confinado, pues, sin éste, todos sus otros derechos son ilusorios al depender enteramente del capricho o antojo del superintendente de la institución penal.[23] Ello fue ignorado por la mayoría de este Tribunal. La disposición reglamentaria bajo protesta que hoy valida este Tribunal, precisamente, da al traste el derecho de acceso a las cortes y hace ilusoria la capacidad de un confinado para fotocopiar documentos legales. Ello, pues, independiente del cumplimiento con todos los criterios de necesidad y disponibilidad de fondos, deja al capricho del superintendente el uso de una herramienta indispensable para el trámite de recursos legales por parte de los confinados.

---

[23]J.L. Gerken, Does Lewis v. Casey Spell the End to Court-Ordered Improvement of Prison Law Libraries?, 95 Law Libr. J. 491, 492 (2003).

Procedía que, demostrado el daño del señor Pérez López al amparo de una disposición reglamentaria despojada diáfanamente de razonabilidad, este Tribunal concluyera que el inciso reglamentario impugnado incide irrazonablemente sobre el derecho de todo miembro de la comunidad correccional al libre acceso a tramitar sus asuntos legales. Sin embargo, la Mayoría optó por encaminar la intervención de este Tribunal en una dirección opuesta, desechando al vacío el reclamo válido de una persona privada de su libertad que ve sus esfuerzos para obtener justicia sofocados por la propia agencia que tiene el deber de ayudarle a tocar las puertas de los tribunales. Por tal razón, me veo forzado a disentir.

## IV

Por los fundamentos antes expresados, disiento. En consecuencia, hubiera revocado el dictamen del Tribunal de Apelaciones, en primer término, porque el tribunal recurrido tenía jurisdicción para atender el caso en los méritos. En segundo término, hubiera invalidado el inciso 6 del Artículo VI del Manual y el inciso 6 del Artículo XI del Reglamento por carecer de fundamento racional basado en un interés legítimo de Corrección.

Luis F. Estrella Martínez
Juez Asociado